BEAUMONT, S. L. & W. RY. CO. v. MANNING.†

(Court of Civil Appeals of Texas. Galveston. Feb. 21, 1912. Rehearing Denied March 21, 1912.)

1. MASTER AND SERVANT (§ 330*)—RELATIONSHIP—EVIDENCE.

In an action for personal injuries against a railroad company, evidence examined, and *held* to show conclusively that the persons responsible for the injuries were in the employment and subject to the control and directions of an independent contractor; and hence verdict should have been directed for the railroad company.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1270–1272; Dec. Dig. § 330.*]

2. MASTER AND SERVANT (§ 301*)—RELATIONSHIP—WHAT CONSTITUTES.

That a contractor constructing a railroad agreed with the railroad company to discharge any incompetent employé on request of the company, and even that employés were engaged by the company, did not make such employés the servants of the company, where they were paid by the contractor, subject to his exclusive direction and control, and subject to be discharged by him.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. 1210–1216; Dec. Dig. § 301.*]

Appeal from District Court, Jefferson County; L. B. Hightower, Jr., Judge.

Action by Pat Manning against the Beaumont, Sour Lake & Western Railway Company and others. From a judgment for plaintiff and against the defendant named, it appeals. Reversed, and judgment rendered for defendant.

Andrews, Ball & Streetman, C. T. Duff, and A. L. Jackson, for appellant. O. T. Holt, John Lovejoy, and J. W. Parker, for appellee.

McMEANS, J. Appellee, Pat Manning, plaintiff in the court below, brought this suit against the Beaumont, Sour Lake & Western Railway Company, appellant, and the Colorado Southern, New Orleans & Pacific Railway Company, and Kenefick-Hammond-Quigley Construction Company, defendants, to recover damages for personal injuries alleged to have been sustained by him through the joint negligence of defendants on or about the 26th day of July, 1907, while plaintiff was engaged in the performance of services as an employé of defendants in the construction of a certain switch track about three miles north of the town of Dayton, in Liberty county.

The plaintiff, on December 8, 1908, having made a settlement with the Kenefick-Hammond-Quigley Construction Company, dismissed as to this defendant, and on January 3, 1910, voluntarily dismissed as to the Colorado Southern, New Orleans & Pacific Railway Company, leaving the Beaumont, Sour Lake & Western Railway Company the sole defendant. This defendant answered by general demurrer and general denial, and specially denied that plaintiff, or those in charge of the construction train, the negligent operation of which caused plaintiff's injuries, were in the employment of defendant, or performing service in its behalf, or that the switches being constructed by the plaintiff were under the immediate direction or control of defendant, but alleged that the work then and there being performed by the plaintiff and his associates, of whose negligence he complained, was under the immediate direction of an independent contractor, or a sublessee of said contractor, and that defendant had no such control or direction over the plaintiff or the said train crew as to render it liable to plaintiff for his alleged injuries. The defendant pleaded other special defenses, which, in view of our decision of the case, need not be stated. The case was tried before a jury, and resulted in a verdict and judgment for the plaintiff, and from this judgment the defendant has appealed.

[1] Appellant's first assignment of error complains of the refusal of the court to give its special charge No. 1, which instructed a verdict for defendant. Under this assignment, it makes this proposition: "Under the undisputed facts, showing that plaintiff himself, and those whose negligence is complained of, at the very time of the injury, were engaged in the performance of services for the contractors, and under their immediate control and direction, and were not then and there subject to the immediate control of the defendant, the relation of master and servant did not exist as between the defendant railroad company and the members of the train crew, necessary to render defendant liable for plaintiff's injuries, under the doctrine of respondeat superior; and the circumstance that one or more of the members of such

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error granted by Supreme Court.

train crew had theretofore been employed by defendant, or subsequently entered and performed its service, or that the work being performed by plaintiff and his associates, under the immediate direction of the construction company, was designed, when ultimately completed, for the use and benefit of the defendant railroad company, or that the latter's representatives had supervision over the work, to see that the contract was complied with, would not affect or alter the relation, so as to fix liability on defendant for the alleged negligence and injury."

If the undisputed evidence shows that the train crew, whose alleged negligence caused plaintiff's injuries, were, at the time plaintiff was injured, in the service of and subject to the exclusive control and direction of the contractors, and that the relation of master and servant in no wise existed as between the defendant and said train crew, then the proposition is sound, and the special charge should have been given.

Appellee contends that, while it is true the service being performed at the time plaintiff was injured was for the Construction Company, it was being done by the Railroad Company through its own employés and instrumentalities, in pursuance of its contract with the Construction Company, and that the relation of the engineer and conductor to the Railroad Company was such as to make it liable for their negligence. These opposing views require a rather extended review of the evidence bearing on the issue suggested.

November 8, 1905, the defendant Railroad Company, then and theretofore operating its railroad between Beaumont and Sour Lake, entered into a written contract with Kenefick, Hammond & Quigley, a partnership, whereby the contracting firm undertook to lay out, construct, and complete in all details an extension of defendant's railroad from Sour Lake to Houston. August 6, 1906, a supplemental contract was entered into between the parties, and on May 7, 1907, another supplemental contract was made by the contractors with R. C. Duff, as trustee for the defendant, the terms of which supplemental contracts we think are not material to this inquiry. The firm of contractors, for the purpose of performing their contract, sublet it to the Kenefick-Hammond-Quigley Construction Company, a corporation organized by them for that purpose, and at the time of plaintiff's injury the work which plaintiff and the train crew complained of were engaged in performing was under the immediate control of said Construction Company, as representative of the contracting firm mentioned. The twelfth section of the original contract reads as follows: "Strict discipline, good order and decorum, among the employés of the contractor, shall at all times be enforced by the contractor; and any employé of the contractor who shall appear to be incompetent, disorderly or intemperate, or in any other way disqualified for the work intrusted to him, shall be discharged immediately upon the requisition of the chief engineer, and he shall not again be employed on the work without the written consent of the chief engineer" (meaning the Chief Engineer of the Railroad Company).

Pat Manning, the plaintiff, was assistant foreman of the employés of the Construction Company engaged in laying track. In connection with the track laying, there was a construction train, manned by McConnell, engineer, Hoffhein, conductor, Franks, brakeman, and Chapman, fireman. The engine by which this train was moved was No. 302, and belonged to defendant Railway Company, but was leased by it to the Construction Company at a fixed price per day. On and prior to July 26, 1907, the headquarters of the Construction Company were at Huffman. On that day, the construction train, manned by the crew above named, was engaged in track laying. The train was run from Huffman to Martha, for the purpose of carrying plaintiff and others engaged in track laying, and to carry materials and tools and also cross-ties, to be placed in a side track at that place by Manning and his men. It was while plaintiff was on one of the cars, and engaged in removing the tools, that he was injured, under circumstances indicating that his injury resulted from the negligence of the conductor or the engineer of the construction train, or of both, and for which defendant is liable, if the relations of master and servant between the defendant company and the conductor and engineer existed at that time.

We have carefully examined the evidence introduced on the trial, and it is our opinion that the undisputed evidence clearly shows that such relation did not exist, and the testimony relied upon by appellee is not, we think, sufficient to raise that issue. To what extent the members of the train crew were under the exclusive control and in the employment and payment of the Construction Company will best appear by setting out the material portions of the testimony of the witnesses who testified on this point.

R. C. Duff, who was president of the defendant company at the time of the injury to Manning, testified: "The Railway Company had no charge or control over the cars, engines, or crews engaged in track laying. The Railway Company had no connection with the train with which Manning was working when he was hurt. I presume that Kenefick-Hammond-Quigley Construction Company was directing the movements of this train. It is not a fact that at the time of the injury to Pat Manning the control of all crews had been taken out of the hands of the Construction Company by the Railway Company; and it is not a fact that the engine, cars, and train, and the crew operating the same, that caused Manning's injury, was under the control of and being

operated by the Railway Company. * * * It appears that Manning's train and crew were engaged in laying a side track at Martha, and this was work which belonged exclusively to Kenefick, Hammond & Quigley, or to their Construction Company."

J. W. Hoffman, who was a member of the firm of Kenefick-Hammond-Quigley Construction Company, as treasurer, and was actively connected with the Construction Company in performing the contract, testified that the Construction Company "had control of and the power and right to direct the engineer, fireman and other members of the train crew that were operating the engine in use at the time of the alleged injury to plaintiff, and the members of said crew were under the immediate control of the Construction Company, and the Railroad Company had nothing to do with the direction or management of said crew. The train crew was paid by the Construction Company; * * * Their names appearing upon the rolls of the company. The train crew was employed by the Construction Company, and was only handling track laying at that time. This portion of the road at which Pat Manning was working was, at the time, under the immediate charge of Kenefick-Hammond-Quigley Construction Company, and had not been turned over to the Beaumont, Sour Lake & Western Railway Company. * * * There was nothing in this contract between the Construction Company and the Railroad Company by which the Railway Company was to furnish any equipment whatever. I do not know who originally employed the members of the train crew; but at the time of the injury to Pat Manning they were in the employ of the Kenefick-Hammond-Quigley Construction Company. It is not true that the employés, or some of the employés, operating the engine and cars at the time and place of the injury to Pat Manning were in the employment of the Railroad Company. The Construction Company had the right to discharge any of the crew at any time they saw fit. If the Construction Company did call upon the Railroad Company to furnish employés in the place of those discharged, disabled, or who quit the service, it did so as a matter of convenience, and not because it was required to obtain such employés from the Railway Company. The Construction Company could have employed any one that it desired. The Railway Company had no power to discharge any engineer or other employé of the Construction Company; but the Construction Company would have, upon request of the superintendent or general manager, discharged any employé who was not satisfactory, or who was objectionable to the Railroad Company. Both the employment of men and the discharging of them, however, would have been done by the Construction Company. The engine and crew were under the direct control of the Construction Company, and were subject to its orders. The conductor was also under the orders of the Construction Company at the time and place of Manning's injury. As a matter of fact, all that the conductor or engineer of the train crew would have to do with the construction of the railroad would be to haul the material where directed by the Construction Company, or switch whatever cars the Construction Company should direct. This was all the train crew was employed to do, or could do, in the construction. All orders or directions for the move-· ment. of the trains would be issued by the superintendent of the Construction Company to the conductor in charge of the train."

It was undisputed that R. L. Price was the Construction Company's general foreman and Harry Moore superintendent of construction. Plaintiff testified: "The engineer, McConnell, and the conductor, Hoffhein, in carrying me back and forth, and in placing the material along the line, were under and directed by Mr. Moore, when Mr. R. L. Price was not there. When Mr. Price was there, the engineer and conductor took their orders from him. *. * * McConnell, the engineer, Hoffhein, the conductor, and Chapman, the fireman, were all engaged in having material . placed in the track under the immediate orders and directions of Mr. Price during time I was working there and at the time of my injury, and we were engaged in that work under such orders * * * at the time of my injury." 'To like effect on this point is the testimony of R. H. Innes, who, during the period which embraced the injury to plaintiff, was employed by defendant as inspector to see that the Construction Company complied with the specifications of the contract, F. A. Hull, who was chief clerk to defendant's superintendent during the time of construction, and' E. M. Smith, accountant for the Construction Company. It was shown that none of the members of the train crew reported the accident to plaintiff to the Railroad Company until after this suit had been filed, but that the original reports by the conductor and other members of the crew, made a few days after the occurrence, had been addressed and delivered to the superintendent of the Construction Company.

C. S. Hoffhein, the conductor, testified that he first entered the service of defendant on January 22, 1907. The first work he did was to bring a train of bad. order cars from Sherman to Beaumont. On January 30, 1907, he began to run as conductor of a passenger train between Beaumont and Sour Lake under the order of D. T. Forbes, defendant's superintendent, and continued in this service about two weeks. He was then made conductor of a train engaged in hauling ·material to the Trinity river for the construction of a bridge, and continued in this work three weeks or a month; then, to use the witness' own words, "after this service, I was sent to

Houston to take charge of that train, loading the steel out of Houston, under Mr. Forbes, and acting as conductor. That train was for hauling steel. I was engaged in this service until the road was taken over, and we were sent down to the San Jacinto river; that was in August some time. That was the same train, you might say, that injured Manning."

This witness, on cross-examination, testified: "After going over to Houston, and during the time we were engaged hauling that material and laying the track, and up to the time of Pat Manning's injury, I got my instructions from Mr. Price, the general foreman, and did my work according to directions given by him. * * * Our work there consisted in carrying material and carrying the track gangs, as directed by Mr. Price. * * * Mr. Price had general supervision of my crew and of the track gangs, and I carried Mr. Manning's gang and probably some others, and distributed them according to the directions of Mr. Price; and Manning's gangs and others did their work according to Mr. Price's instructions."

The testimony is without contradiction that during the months of March, April, and May, and up to and for two or three days after Manning's injury, the members of the train crew were paid for their services by the Construction Company. The conductor, Hoffhein, after testifying to that fact, further testified: "About three or four days after the date of Pat Manning's injury, I and my crew changed the character of our service, and thereafter for the last three days of the month [July] I received my compensation from the defendant Railroad Company. It was some days after the injury to Manning that I began to receive compensation from the Railroad Company for my services, and not prior to that time."

It is undisputed that the railroad was taken over by the defendant Railroad Company from the Construction Company about three days after Manning was hurt. It was further undisputed that the Construction Company had the exclusive right to employ and discharge the members of the train crew, although the Railroad Company in the contract reserved the right to require the Construction Company to discharge any employé of the latter who should appear to be incompetent, disorderly, intemperate, or in any other way disqualified for the work intrusted to him, and this applied not only to the members of the train crew, but to all other employés as well. It appears, however, that the defendant never availed itself of the rights reserved by it in that part of the contract. It further appears that all men employed in the train service of the Construction Company were required to file an application with the superintendent of the Railroad Company, to the end that the latter might be assured that competent men were being employed, and with the view of

the taking over of these men by the Railroad Company when the construction was completed. McConnell, the engineer, was originally employed by Baker, the defendant's master mechanic, and went at once to the construction camp. He said that he was employed by Baker to run engine No. 302, and "I went out there and took charge. I ran this engine on down until the time that Manning was injured." This witness further testified that during the time he was engaged in this work, and until a few days after the injury of Manning, that he was in the service and employment of the Construction Company. Chapman, the fireman, and Franks, the brakeman, were employed by the Construction Company in the first instance.

[2] From the foregoing findings of fact, it follows as a necessary conclusion of law that the conductor and engineer were in the employment of and subject to the exclusive control of the Construction Company, and that the Railroad Company had and exercised no such right of control over them as to make them its servants, or as would render it liable for injuries caused by their negligence, under the doctrine of respondeat superior. The facts upon which appellee principally relies are not sufficient to authorize a different conclusion. The reservation by defendant in the original contract of the right to have any employé of the Construction Company discharged for incompetency, disorderly conduct, intemperate habits, or other disqualification applies with equal force to every employé of the latter from the conductor and engineer to the water carrier and the spike driver, who were unquestionably employed and paid and could have been discharged by the Construction Company at will. The reservation gave the Railroad Company the right to require the discharge of any employé for cause only; but the right to discharge was not its right exclusively, and the right of the Construction Company to employ and discharge, with or without cause, was not surrendered, but exercised at its will. The right to control and direct the employés in the discharge of their duties in any way was not conferred upon the defendant; but this right was exclusively in the Construction Company. The fact that the trainmen, while in the service of the Construction Company, were required to file applications with the Railroad Company, in order that the defendant might be assured that competent men were being used on the Construction Company's train, is not inconsistent with the conclusion that these men were not the servants of defendant. These employés were already engaged in the service of the Construction Company at the time said applications were required, and, besides this, it was shown that the applications were required by the Railroad Company in anticipation of its continuing the trainmen in the service of the Railroad Company, each in his particular capacity, after the construc-

tion was finished. The statement of Hoffhein, the conductor, herein quoted, together with his further testimony, shows that he became the employé and was in the pay and subject to the exclusive control of the Construction Company from the time he began on the construction work until a few days after plaintiff was hurt, when he and the others of the train crew changed the character of their service, and thereafter his and their compensation was paid by the Railroad Company. So, also, the testimony of the engineer. The fact that both the conductor and engineer were primarily employed by the defendant is entitled to no serious weight, when considered in connection with the undisputed proof that from the time they began work in the construction service they were in the employment of the Construction Company, were paid by it, and were under its exclusive control, and subject to be discharged by it at its will. And, even should it be conceded that the trainmen were employed by defendant for the purpose of doing the work they were engaged in at the time Manning was hurt, and that it had the right to discharge them for delinquencies, such as are mentioned in the twelfth section of the contract, yet, according to the following decisions, if at that time, they were subject to the exclusive control of the Construction Company, and were doing its work, and the Railroad Company had no right of control or direction over them in the performance of the work in which they were engaged, the trainmen were the servants of the Construction Company and the defendant would not be liable for injuries resulting from their negligence. Standard Oil Co. v. Anderson, 212 U. S. 218, 29 Sup. Ct. 252, 53 L. Ed. 480; Byrne v. Kansas City & Ft. Scott Ry. Co., 61 Fed. 605, 9 C. C. A. 666, 24 L. R. A. 693.

Nor would the fact that, when a member of the train crew obtained a leave of absence, the Construction Company would call upon the Railroad Company to send another man to take his place be sufficient to prove the existence of the relation of master and servant between the defendant and the members of the train crew, whether taken by itself or in connection with other facts relied upon by appellee to prove the issue, when considered in connection with the fact that the person so sent to relieve the trainman, on going to work, at once became the employé of the Construction Company, was paid by it for his services, was under its exclusive control, and could be discharged by it at its will, and was in no sense under the control of the defendant company.

We think the legal conclusion reached by us, as based on the facts stated, are in consonance with all the authorities. Cunningham v. Railway Co., 51 Tex. 503, 32 Am. Rep. 632, was a case in which the appellant sought to recover damages for personal injuries received by him while a passenger on a train operated over defendant's railroad for the purpose of transporting construction material. The defendant set up the special defense that the section of road upon which the accident is alleged to have occurred, and the train on which the injuries were received, were then in the possession of Douglas, Brown, Reynolds & Co., persons who had contracted to construct that portion of the road, and that the train upon which plaintiff was hurt was at the time being operated for the sole benefit of the contractors, and by their agents, servants, and employés, and not by the agents, servants, or employés of the Railroad Company. A trial resulted in a verdict and judgment for the Railroad Company, which, on appeal to the Supreme Court, was affirmed, and in the opinion of that court the following language is used: "Is the defendant company liable in damages for the act of Douglas, Brown, Reynolds & Co., independent construction contractors, for an alleged negligent management of one of defendant's trains, used and controlled by Douglas, Brown, Reynolds & Co., for construction purposes, upon that part of the road not completed and delivered to defendant? There is a marked distinction between the liability of the master for the acts of an ordinary servant in the usual scope of his duties as such, and that of an employer for the acts of an independent contractor. This distinction rests upon the reasonable principle that, in a proper case, the liability of the master should be commensurate with the extent only of his right to control. [Citing authorities.] * * * In the first relation, that of master and servant, the master has the right to direct the conduct of the servant, and the mode and manner of doing the work; and hence his corresponding liability for an improper execution of the same. Wood on Master and Servant, § 281. He is deemed the master, who has the supreme choice, control, and direction of the servant, and whose will the servant represents, not merely in the ultimate result of the work, but in all its details. Shear. & Red. on Neg. § 73. * * * The true test * * * by which to determine whether one who renders service to another does so as a contractor or not is to ascertain whether he renders the service in the course of an independent occupation, representing the will of his employer only as to the result of the work, and not as to the means by which it is accomplished. Shear. & Red. on Neg. §§ 76–79, and other authorities."

Whether those operating defendant's train in that case had been originally employed by defendant for that purpose does not affirmatively appear from the statement of the case as reported; but this fact seems to be implied from the following language of the opinion: "That Douglas, Brown, Reynolds & Co. may have used, as a means to assist in carrying out their contract to construct the road, a train belonging to the defendant company, and operated by servants primarily

employed by it, would not, of itself, make the company liable for their acts, unless it had the immediate control and management of the train. To hold otherwise would virtually forbid parties to construct works of improvement, or perform many other acts, except by their own servants, unless at great peril for liability for actions of others, over them whom they have no immediate control. [Citing Hale v. Dutant, 39 Tex. 669, and various other authorities.]"

In 20 American & English Encyclopedia of Law, 178 (2d Ed.), the general rule is stated in the following language: "The doctrine of respondeat superior applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged with the result of some negligence or wrong at the time of and in respect to the very transaction out of which the injury arose. Hence the fact that the party to whose wrongful or negligent act the injury may be traced was at the time in the general employment and pay of another person does not necessarily make the latter master, so far as that particular act is concerned, and responsible therefor. Wylie v. Palmer, 137 N. Y. 248 [33 N. E. 381, 19 L. R. A. 285]. It is accordingly well settled, that one who is the general servant of another may be loaned or hired by the master for some special service, so as to become as to that service, the servant of such third party: and where a general servant is so loaned or hired to another, and as regards the particular service for which he is so loaned or hired, and subject wholly to the direction and control of that other, the latter, and not the general employer, is the master, so far as the particular service is concerned, and liable for injuries caused by the negligent and wrongful act of the servant while engaged in the duties pertaining to such service." See Cunningham v. Moore, 55 Tex. 377, 40 Am. Rep. 812; Byrne v. Kansas City & Ft. Scott Railway Co., 61 Fed. 605, 9 C. C. A. 667, 24 L. R. A. 693; Powell v. Construction Co., 88 Tenn. 692, 13 S. W. 691, 17 Am. St. Rep. 925; Pierce on Railroads, 289; 2 Thompson on Negligence, 913.

The case of Burton v. G., H. & S. A. Ry. Co., 61 Tex. 527, relied upon by appellee, is easily distinguished from the case under consideration. That case involved an action by the surviving wife for damages for the death of her husband through the negligence of those operating the train on which her husband was riding as a passenger over defendant's railroad. The defendant Railway Company, in its answer, alleged specially (as claimed in the Cunningham Case, above mentioned) that the section of railroad upon which the injury occurred was under the control of one Monroe, who was an independent contractor, engaged in performing construction work for the defendant, and that the train was being operated under the control and direction of such contractor, and not the control or direction of the defendant Railway Company. The trial resulted in a verdict and judgment in favor of the defendant Railway Company, from which appeal was taken to the Supreme Court. The facts shown, and the proceedings in the lower court complained of, are recited substantially in the opinion of the court, and we quote therefrom as follows: "There is testimony tending to show that the Railway Company was operating that part of its road on which the derailment took place, from which the death of the appellant's husband occurred, although it had not received the road from the contractor, and there is also evidence tending to show, in general terms, that this part of the railway was under the exclusive control of the contractor, Monroe. It appears that the conductor and engineer of the derailed train were employed and paid by the Railway Company, which alone had the power of selection and discharge. It also appears that it was usual for the company to discharge any of its employés when complaint of misconduct or inefficiency was made by the contractor. * * * The derailed train was the property of the appellee, and its principal business evidently was to transport such material as was needed in the construction of the road from Lacoste Station west to Hondo Switch, at which place it was received and distributed by a locomotive and train under control of another conductor and engineer, as the road advanced westward. The inference from the record is that the Railway Company, in making terms with the contractor, had agreed, by its own trains, operated by employés of its own selection, and in its pay, subject to be discharged alone at the will of such of its own officers as had confided to them that power, to transport from San Antonio west such material and supplies as were necessary to the proper construction of its road and the support of the contractor and his employés; or that the Railway Company had contracted to furnish trains so manned to the contractor, with which he might, under his own control, transport such material and supplies as might be needed."

Justice Stayton, delivering the opinion of the court, says: "If there was negligence resulting in the death of appellant's husband, that negligence was, under the facts in proof, the negligence of the engineer or conductor of the derailed train; and the question of relationship which they bore to the appellee at the time was one of the most important in the case. This was recognized by the court in the third charge given, in which the jury were informed the plaintiff was entitled to recover if the injury resulted from the negligence of the employés of the defendant. There was nothing in the charge, however, which informed the jury what would constitute those engaged in operating the train the employés of the Railway Company or the employés of the contractor. As to that,

the jury were left to draw their own conclusions, unaided by the charge of the court. There is no doubt, under the evidence, that the engineer and conductor, and others engaged in running the train, were selected, employed, and paid by the Railway Company, and that they could be discharged alone by some of its own officers, empowered by it to act in this respect; cause for discharge of these persons could be made known to the company by the contractor, and upon his representations they would ordinarily act. This would evidence that, while the company withheld from the contractor one of the essential rights of a master, he was made its servant, in so far as to give information of misconduct, upon which, instead of its own knowledge, acquired through its own officers, the employé would be discharged. * * * To rebut this prima facie case rested with the defendant. Was it enough, for this purpose, to show that for certain purposes the contractor had an exclusive control over that section of the road, or to show that the contractor, for such purposes, had an exclusive control over the construction train? We think not. * * * "

Continuing, the court says: "If the contract between the railway company and the contractors was that the former, by its own trains, run by its own employés, undertook to transport for the contractors such material and supplies as might be needed in the construction of the road to be built, then the Railway Company would be responsible to any one not an employé of the company for an injury received through the negligence of those operating the train; for those thus engaged would certainly be the servants of the company, even though the contractors may have been authorized to determine when, where, and to what extent material and supplies should be transported, and to that extent to control the trains and employés of the company. If the contract was that the Railway Company should furnish certain trains, or a sufficiency of locomotives and cars, to be manned by men of the railway's own selection, to be paid by it, and subject to be discharged by it alone, to be used by the contractors in the transportation of such material and supplies as would be needed, but to be operated according to the directions and will of the contractors, then there might be some question whether those engaged in operating the trains were the servants of the Railway Company; but, even in such a case, we are of the opinion that, in reason and upon the weight of adjudicated cases, they are and should be considered the servants of the Railway Company, for in such case it has retained to itself two of the most essential powers of a master—the power to select and the power to discharge. * * *"

Continuing and approving, but differentiating, the case of Cunningham v. Railway

Co., the court uses the following language: "That neither corporations nor persons are liable for injuries resulting from the negligence of independent contractors or their servants, while engaged in doing work for such corporations or persons, is well settled. The rule was recognized in Cunningham v. Railroad Co., 51 Tex. 509 [32 Am. Rep. 632], which is cited as an authority in support of the charges given in this case. The defense in that case was that the injury resulted while the train was in the exclusive use and control of the contractors engaged in constructing a portion of defendant's road, and operated by the contractor's own servants, agents, and employés. The facts of the case are fully stated in the report of the case, in so far as was necessary to a correct understanding of the points considered in the opinion; a reference, however, to the record of that case shows that the persons engaged in operating the train were in the employment, pay, and control of contractors; and under such a state of facts the charge which was given by the court below, and approved on appeal, was unobjectionable."

The length of this opinion forbids any further discussion of the other authorities cited by appellee. The case of Standard Oil Company v. Anderson, 212 U. S. 215, 29 Sup. Ct. 252, 53 L. Ed. 480, properly analyzed and applied to the facts of the case before us, sustains our conclusion that the defendant in this case is not liable for the negligence of the conductor and engineer, under the doctrine of respondeat superior. The other authorities cited and not discussed have no particular application to the facts of this case. The case seems to have been fully developed on the trial in the court below, and, as no liability of defendant for the injury sustained by plaintiff was shown, the judgment of the trial court must be reversed and judgment be here rendered for the appellant; and it has been so ordered.

Reversed and rendered.