THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COM-
PANY v. JUNIUS G. GROVES, *as Administrator of the
Estate of Edward Jackson, deceased.*

No. 8252.

1. CARRIERS — *Collision with Train of Another Road—Liability.*
A railroad company running a train in charge of its own servants
on the track of another company by its permission, under an ar-
rangement that the train-dispatcher and operators employed by
such other company may stop the train at pleasure at any tele-
graph station, is nevertheless liable in damages for injuries result-
ing in the death of a passenger on the train of such other company
by reason of the negligence of the engineer in running his engine·
into it, although the negligence of such train-dispatcher and
operators and of the crew of the train of such other company may
have been greater than that of such engineer.

2. INSTRUCTION, *When Erroneous — When not.* An instruction
to find for a party, embracing fewer conditions than those neces-
sary to a recovery, would be erroneous; but sometimes a part
only of the conditions alleged or proved may be sufficient to justify
a recovery, and in such case the omission of the other conditions
is not error; and the theories of both parties need not, and gener-
ally should not, be stated in a single instruction.

3. ——— *When to be Qualified.* An instruction that "the jury
are not bound to take the testimony of any witness as absolutely
true" should be qualified by adding, "if there is reason to believe
it false or mistaken," or words of similar import.

4. ——— *Harmless Error.* Although an instruction asked be
unobjectionable, yet no error is committed in refusing it if the
same proposition is fully covered by the instructions of the court
embodied in different language.

5. ——— *Refusal, not Error.* The jury, in the consideration of
the conduct and motives of men, may take into account the in-
stinct of self-preservation and the known disposition to avoid in-
jury; but the refusal of the court so to instruct the jury is not
material error when there is direct and unquestioned evidence of
such conduct, so that presumptive evidence is of no value.

*Error from Wyandotte Court of Common.Pleas.*

EDWARD JACKSON, a passenger on an east-bound
train of the Union Pacific Railway Company, was
killed at a point a little west of Rock Island Junction,

about 7 o'clock in the morning of October 22, 1890, by reason of a rear-end collision between said train and a train of the defendant company, which was following it. Under some kind of a lease or trackage contract between the two companies (not introduced in evidence) the defendant's passenger-trains between North Topeka and the union depot at Kansas City, Mo., were run over the track of the Union Pacific company; and its freight-trains were run over the same track from North Topeka to Rock Island Junction, which is about $2\frac{1}{2}$ miles west of said union depot. At that point such freight-trains were deflected toward the southeast on a track of the defendant company leading to its freight-house and yards. There is a telegraph station at the junction, and all but first-class trains are required to register there. The defendant company transacts no local business between North Topeka and Kansas City, and, while its trains occupy the Union Pacific track, they are under the control of the train-dispatcher and operators employed by the Union Pacific company in so far that they may be stopped and held for further orders at any telegraph station by the display of certain signals. As a part of the compensation for the use of the track, the defendant reimburses the Union Pacific company by paying a certain proportion of the wages of the train-dispatcher and operators upon a wheelage basis. The locomotive and train crews on all Rock Island trains are employed and paid by that company, but they are subject to examination by the officials of the Union Pacific company as to their competency and their acquaintance with the track between North Topeka and Kansas City before they are allowed to run over it. Telegraph stations are established and in use at Lawrence, Linwood, Bonner Springs, and

Edwardsville, distant from the union depot at Kansas City 39 miles, 28 miles, 17 miles, and 13 miles, respectively. On the day of the collision referred to, the time of the Union Pacific east-bound morning train at the points hereafter named was as follows: Lawrence, 5:35; Linwood, 5:58; Bonner Springs, 6:22; Rock Island Junction, 6:50; and Kansas City union depot, 7 o'clock; and the time of the Rock Island east-bound morning train was as follows: Lawrence, 5:52; Linwood, 6:16; Bonner Springs, 6:35; Rock Island Junction, 7; and Kansas City union depot, 7:10 o'clock. Linwood, Bonner Springs, and Edwardsville were not stopping-places for the Rock Island trains, and they stopped only upon signals. Under the joint rules, trains were not allowed to run nearer together than five minutes, and it was the duty of the train-dispatcher and operators to keep them at least that far apart. On the morning of the collision the Rock Island train overtook the Union Pacific train at Lawrence, and was there flagged by the latter, there being a fog at the time, and this increased somewhat in density in going east. The Rock Island train was held at Lawrence until about 10 minutes after the Union Pacific train had left, and no signal was displayed to stop the Rock Island train at Linwood, Bonner Springs, or Edwardsville, although when it arrived at Bonner Springs the Union Pacific train had been gone only three minutes. The operator there notified the train-dispatcher that the Rock Island train was approaching, and asked if it should be stopped, but the train-dispatcher answered, ''Let her go,'' and the train proceeded without stopping until the collision occurred. The rules require that a brakeman must always be stationed on the rear car of every train, and must have in his possession a red flag by

day, and red and white lanterns (lighted) by night, also six torpedoes ready for immediate use; but the red tail-lights of the Union Pacific train had been taken in and green flags substituted just after leaving Bonner Springs, notwithstanding the fog, and there was no brakeman on the rear car, which was a sleeper, and the torpedoes were kept in the rear of the chair-car, which was next in front of the sleeper. A short distance west of Rock Island Junction, the Union Pacific train ran over and exploded two torpedoes, a signal to reduce speed immediately and look out for a danger-signal, and that train at once reduced speed to about 8 to 12 miles an hour. Some evidence was introduced tending to show that the Rock Island train had also checked its speed by reason of its approach to the junction, but its time was estimated by witnesses at from 18 to 35 or 40 miles an hour at the time of the collision. Enough is shown to render it certain that the speed was great as compared with that of the Union Pacific train, for it struck the latter with great violence, dismantling the locomotive, throwing off its smoke-stack, killing the engineer, seriously injuring the fireman, driving the sleeper into the chair-car and the latter into the smoker, where Jackson was killed, shattering nearly all the platforms, and badly wrecking both trains. The fireman testified on the trial that neither he nor the engineer saw the Union Pacific train until the locomotive struck it.

The plaintiff in error excepted to and now complains of the following instructions, numbered 4, 5, and 6, given to the jury:

"4. The court instructs the jury, that if you believe from the evidence that there was a heavy fog prevailing at the time and place of the collision in question, and that such collision occurred in a populous and thickly settled community near the Rock

Island Junction, in the vicinity of which streets and roads lie adjacent to and across the railroad in question, and where there are many tracks, upon which it was at that time usual and customary for defendant to switch great numbers of cars, and that an ordinarily careful and prudent person running or operating a passenger-train upon the track on which the collision occurred and approaching the place where the collision occurred from the west would have caused the speed of such train to be slowed up and slackened, and not to run there at a high rate of speed, and that defendant company operated a passenger-train on such railroad, and approached such place from the west and failed to slow up or slacken the speed of such train, but negligently permitted said train to run at a high and negligent rate of speed, at the place and under the circumstances aforesaid, into and against the train of the Union Pacific company, whereby Edward Jackson was wounded and killed, then your verdict should be for plaintiff.

"5. The court instructs the jury, that if you believe from the evidence that defendant is a corporation, and that it and the Union Pacific Railway Company used the railroad-track and its appurtenances between Kansas City and Lawrence and Topeka in common, and that on the morning of October 22, 1890, the regular daily passenger-train of the Union Pacific Railway Company came eastward on such track from Lawrence toward Kansas City, and that the regular passenger-train of the Chicago, Rock Island & Pacific Railway Company started from Lawrence and continued eastward along such track, following and, but a few moments·subsequent to the said passenger-train of the Union Pacific Railway Company destined for Kansas City, and that the servants, agents and employees who had charge, run and operated the said Rock Island train knew that the said train of the Union Pacific company was but a short distance in front of them, traveling eastwardly on said railroad, and knew, or by the exercise of ordinary care, prudence and forethought might have known, that said

train of the Union Pacific company would slacken and slow its speed when within the yard limits of the defendant company at or near the place or junction known as the Rock Island Junction, and that said train of the Union Pacific company did then and there slacken and slow its speed, and that the said train of defendant company, while being run and operated by its servants and employees, was caused or permitted by them negligently to be run at a high rate of speed of about 35 or 40 miles an hour, without knowing that said track was free and clear of the said train of the Union Pacific company, into and upon the said train of the Union Pacific company, at or near the said Rock Island Junction, whereby said train was wrecked and Edward Jackson was killed, then your verdict should be for the plaintiff.

"6. The jury are the sole judges of the credibility of the witnesses and of the weight to be attached to the testimony of each and all of them, and the jury are not bound to take the testimony of any witness as absolutely true ; and they should not do so if they are satisfied from all the facts and circumstances proved on the trial that such witness is mistaken in the matters testified to by him, or that for any other reason his testimony is untrue or unreliable."

The plaintiff in error also complains of the refusal of the court to give the following instructions, numbered 20 and 22, requested by it :

"20. The jury are instructed that no rate of speed, however swift, is, in itself, negligence, and in passing upon the question whether the speed of the Rock Island train which collided with the train of the Union Pacific was running at too great a rate of speed, you must take into consideration all the facts and circumstances in the case. The fact of the train passing several telegraph stations of the Union Pacific company, without notice of the proximity of the forward train ; the fact, if fact you find it to be, that the Union Pacific train at the time of the collision should have been in Kansas City ; the further fact

that no rear lights or signals were displayed or fusee dropped by the forward train ; and also as to whether the following train had any notice or signals of any kind which should have warned its engineer that a train was likely to be upon the track at or near the point of the collision."

"22. In determining the question whether or not the engineer of the Rock Island train, at the time of the collision, was exercising ordinary care and caution, you should give due weight to those motives and instincts which naturally lead men to avoid injury and to save their own lives."

The case was tried at March term, 1891, and judgment was rendered in favor of the plaintiff below April 29, 1891, for $5,500 and costs of suit. The defendant brings the case to this court. The opinion herein was filed April 11, 1896.

*M. A. Low,* and *W. F. Evans,* for plaintiff in error.
*Scarritt, Griffith & Jones,* for defendant in error.

The opinion of the court was delivered by

MARTIN, C. J.: I. The principal question is whether the Rock Island train was so far under the control of the Union Pacific company that the negligence of the Rock Island crew must be imputed to the Union Pacific company, the defendant company being thereby exonerated from liability. Counsel for defendant seek to cast the blame upon the train-dispatcher and operators in failing to stop the following train, particularly at Bonner Springs, and upon the Union Pacific crew in taking in the tail-lights, and failing to keep a brakeman on the rear end of the train, supplied with lanterns and torpedoes, as required by the rules. It may be that under the evidence the train-dispatcher and operators should be treated as the joint employees

of the two companies, and the servants of the particular company whose business they were attending to for the time being. (*H. & St. J. Rld. Co. v. Martin,* 11 Bradw. 386, 390 ; *W. St. L. & Pac. Rly. Co. v. Peyton,* 106 Ill. 534, 540 ; *N. & C. Rld. Co. v. Carroll,* 6 Heisk. 347, 352, 354 ; *Vary v. B. C. R. & M. Rld. Co.,* 42 Iowa, 246.). We need not, however, so decide in this case, for the evidence tends to show that the Rock Island train was coming into the junction at an unusual speed, considering the fog, the knowledge of the engineer and fireman that the Union Pacific train was behind time, but had not lost its rights, and the rule that "first-class trains, when behind time, must not exceed card time unless the condition of track, weather, and all circumstances warrant their doing so with safety." There is some conflict in the testimony as to the distance that the Union Pacific train might have been seen through the fog. It was daylight, and all agree that the train might have been seen at some short distance, yet it was not observed at all before the collision. It being known that the Union Pacific train was behind time when leaving Lawrence, that it had stops to make at stations where the Rock Island train was not expected to stop, and that the fog would probably prevent it from making up time, a reasonable exercise of judgment on the part of the Rock Island engineer should have indicated to him that the Union Pacific train could not be far ahead, and that he should run very cautiously. The Union Pacific company was not a party to this suit, and therefore was not called upon to justify or extenuate the conduct of its crew or that of the train-dispatcher and operators. It would seem from the evidence introduced that the greater culpability rests upon them ; but this would not excuse the

negligence of the crew of the Rock Island train, nor
relieve the defendant company from liability for an
injury caused thereby. (*C. K. & W. Rld. Co. v. Ran-
som*, ante, p. 559.)   The speed of the Rock Island train
at the time of the accident was under the direct con-
trol of the engineer, and to declare that he was then
the servant and under the exclusive control of the
Union Pacific company would be a fiction which we
are not warranted in creating out of the circumstance
that the train was running upon the Union Pacific
track subject to detention at telegraph stations by the
train-dispatcher and operators employed by the Union
Pacific company.   In *Webb v. P. & K. Rld. Co.*, 57 Me.
117, 135, it was held that, when one railroad company
is by permission using the track and easement of
another, the former is held to observe such precau-
tions for the safety of the public at a crossing as shall
be fully equivalent to those required by reasonable
care and prudence of the latter.   Edward Jackson,
while occupying the smoker on the Union Pacific train,
cannot be regarded in the light of a trespasser as to
the Rock Island company.   The passenger and the
train had a right to be there, and Jackson was entitled
at least to a measure of protection equal to that of a
person crossing the track upon the highway.   It was
the duty of the Rock Island engineer to be on the
lookout for the train upon which Jackson was a pas-
senger.   No diligence on the part of the train-dispatcher
or the operators could have averted or rendered less
disastrous a collision consequent upon the failure of
the engineer to keep a proper lookout for obstructions
on the track, or upon the running at a reckless speed
at a place where great caution was necessary to avoid
disaster.

A general servant of one master may become the

39—56 KAS.

special servant of another for a particular purpose, so that the negligence of the servant in the particular business may not be imputable to the general master. This exemption of the general master from liability arises when the special master has the full and independent control of the servant for the time being. The principle is analogous to that of the exemption of the owner of a building or other structure in process of erection for an injury resulting from the negligence of the servant of an independent contractor to whom the work has been let, the servant in such case not being deemed the servant of the owner; and cases of this character are cited by counsel for plaintiff in error as being applicable here. In *Byrne v. K. C. Ft. S. & M. Rld. Co.*, 61 Fed. Rep. 605, it was held that a railroad company is not responsible for negligence in the operation of an engine when, at the time of the casualty, the engineer and the crew by which it was operated were hired to and under the control of another company, and this on the principle that, though the servant may remain the general servant of the master, yet if the master has parted with the power of controlling him in the work in which·he has engaged, the master will not be responsible for his negligence. *Smith v. St. L. & S. F. Rly. Co.*, 85 Mo. 418, was decided upon the same principle by three of the five judges, the other two dissenting upon the ground that this doctrine was not applicable to the facts in the case. There the defendant had no track between Pacific Junction and St. Louis, but its trains were transported over the Missouri Pacific track between those places by locomotives, engineers and firemen furnished by the Missouri Pacific company, although the other trainmen were employed and paid by the defendant company. No business was transacted by

the defendant company on its own account between Pacific Junction and St. Louis, but Missouri Pacific passengers were taken upon and permitted to alight from its trains at the intermediate and terminal stations. The plaintiff's intestate purchased a ticket from the Missouri Pacific company at St. Louis for the town of Webster, one of the intermediate stations, and in alighting at that place he was injured and killed by reason of the failure of the train to stop long enough for that purpose. These facts were held by the majority of the court, with at least a fair show of reason, to establish that as to this Missouri Pacific passenger the servants of the defendant company were under the control of the Missouri Pacific company in the transaction of the passenger business of the latter, and that it alone ought to be held liable. We need not consider, however, whether the decision of the majority or the dissent of the minority was based upon the better reason, for, in any event, the facts are essentially dissimilar from those in the present case.

II. The objections to instructions 4 and 5, respectively, given to the jury, may be considered together. It is said that each is complete in itself, and that neither embraces all the elements necessary to a recovery. It is often difficult to frame a single instruction which shall embrace all the phases of a complicated case, but this is generally unnecessary. An instruction to find for one party or the other, embracing fewer conditions than those necessary to a recovery, would, of course, be erroneous; but sometimes a part only of the conditions alleged or proved may be sufficient to justify a recovery. It is claimed in argument that instruction 4 singles out the circumstance that the collision occurred in a thickly settled community,

while the Rock Island train was running at a high rate of speed, and makes this the basis of a verdict for the plaintiff; and counsel say that the place was not thickly settled. This, however, was a question of fact for the jury, and we cannot say that there was no evidence tending to support it. But, suppose this condition should be left out of consideration altogether : the instruction would still seem sufficient, for it embraces all the essential elements of negligence to justify a recovery. It is also said that instruction 5 was unfair to the plaintiff in error, because it was based upon the testimony and theory of the defendant in error, and did not refer in any manner to the faults of the train-dispatcher and operators and the crew of the Union Pacific train. The negligence of one or all of these, however, would not absolve the Rock Island company from liability for the negligence of its own servants, and in giving instructions upon the theory of the plaintiff below it was not necessary for the court to explain the theory of the defense. This was properly done elsewhere in the instructions.

III. Some adverse criticism is bestowed upon that part of instruction 6 to the effect that "the jury are not bound to take the testimony of any witness as absolutely true." It would have been better to omit this clause, or to qualify it by adding, "if there is reason to believe it false or mistaken," or words of similar import. The objectionable clause is of the character criticised by Mr. Justice JOHNSTON, in *C. B. U. P. Rld. Co. v. Andrews*, 41 Kan. 370, 382 ; but, for the reasons there stated, we do not deem the error to be so material or prejudicial as to justify the reversal of the judgment.

IV. The first clause of instruction 20 requested by the defendant was unobjectionable. The second

clause, if it may be called such, is imperfect in that it leads to no conclusion; but the proposition was fully covered by other instructions given by the court at the request of the defendant below, either as asked or in a modified form, and therefore no error was committed in refusing it.

V. Instruction 22 requested by the defendant below might have been properly given. The jury, in the consideration of the conduct and motives of men, may take into account the instinct of self-preservation and the known disposition to avoid injury. (*Way v. Ill. Cent: Rld. Co.*, 40 Iowa, 341, 345.) . In some cases such an instruction may be necessary, especially where a fact is involved in doubt, and there is no direct testimony upon the subject. In such a case presumptions are often important. In this, however, direct proof was available, and it appeared that the Rock Island locomotive collided with the Union Pacific train before the engineer knew that it was there. The inference of negligence arising against him is therefore very strong, and the presumption of care and caution from the instinct of self-preservation would have little bearing upon the case, and the court committed no material error in refusing the instruction. (*Dewald v. K. C. Ft. S. & G. Rld. Co.*, 44 Kan. 586.)

The judgment must be affirmed.

All the Justices concurring.