## CLARK et al. v. GEER.

### (Circuit Court of Appeals, Eighth Circuit. March 21, 1898.)

### Nos. 972 and 973.

**1. CARRIERS—SPECIAL PASSENGER CONTRACT.**

Where a cattle dealer purchases a ticket to ride on a freight train on condition that the company shall not be liable to him in any manner as a passenger, or for any accident resulting to him, or liable to him for injury to person or property, unless caused by the gross negligence of the company, the liability in no case to exceed $1,000, such agreement shows that he was contracting solely with reference to a liability to himself, and not with reference to the statutory liability of the carrier to others in case of his death through the wrongful act of the carrier.

**2. SAME—NEGLIGENCE—DEATH.**

Where the trains of one company, in charge of its own employés, run over the track of another company, under contract that they shall obey the orders of the train dispatcher of the latter company, such contract does not release the company so using the track from liability for injuries caused by the negligence of its employés.

**8. RESPONDEAT SUPERIOR.**

A master cannot claim exemption from liability for damages occasioned by the negligent act of his servant committed while in his immediate service, and doing his work, merely because he has empowered a third party to give that servant directions relative to certain matters connected with the doing of the work.

In Error to the Circuit Court of the United States for the District of Kansas.

Arthur C. Geer, as administrator of William A. Geer, deceased, the defendant in error, sued the receivers of the Union Pacific Railway Company, hereafter termed the "U. P. Company," and the Chicago, Rock Island & Pacific Railway Company, hereafter termed the "R. I. Company," they being the respective plaintiffs in error, on account of the death of his intestate, who was killed in a railway collision which occurred on January 2, 1894, at Linwood, on the line of the U. P. Company, between Kansas City and Topeka, Kan. The deceased was, at the time of the collision, a passenger on a freight train of the U. P. Company, which was run into at the rear end by a freight train of the R. I. Company. Both trains between which the collision occurred were at the time traveling east over the same track. Both companies operated their freight and passenger trains between Topeka and Kansas City, Kan., over the track of the U. P. Company, under an arrangement existing between them which is hereafter referred to. The petition in the case averred that the death of the deceased was occasioned by acts of negligence on the part of both railway companies, and that the negligence of the R. I. Company consisted, in part, in the failure of its engineer in charge of its freight train to keep a proper lookout ahead, and a failure on his part to discover at an earlier moment, as he ought to have done in the exercise of ordinary care, the red lights of the rear end of the U. P. train, which was run into, and on which the deceased was riding when he was killed. There was considerable evidence tending to support this charge of negligence against the R. I. Company. There was a verdict and judgment against both companies for the sum of $6,000. To reverse that judgment each company, for reasons which will hereafter appear, sued out a separate writ of error, but both cases are before us on a single record.

N. H. Loomis (A. L. Williams and R. W. Blair, on the brief), for the receivers.

M. A. Low (W. F. Evans, on the brief), for Chicago, Rock Island & Pacific Railway Company.

Waters & Waters and H. G. Laing filed brief for administrator.

Before SANBORN and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

At the time of his death the deceased, who was a dealer in live stock, was traveling in the caboose of the freight train, in charge of two car loads of cattle which he intended to sell at Kansas City. He was a passenger on said train under the terms of a special contract, which contained, among others, the following provisions:

"In consideration of the special contract under which this ticket is issued it is hereby understood and agreed by the holder that: (1) This ticket is not issued to the holder hereof as a passenger, but is issued at his special instance and request, in order to enable him to accompany a stock shipment on a freight or stock train in order to care for the stock en route: and the holder hereof agrees that the company shall not be liable *to him* in any manner as a passenger, or for any accident resulting to him from the operation of the train on which he rides, or from the manner of handling the same by the employés of the company; and he further agrees that the company shall not be liable *to him* for injury to the person or property of the person using this ticket, unless the same is caused by the gross negligence of the company; and he further agrees that in no case shall the liability of the company exceed the sum of $1,000."

The italics are our own.

Both railway companies join in the contention that, under the terms of the aforesaid contract, the recovery, even if they are liable for the death of the deceased, should have been limited to $1,000, and in this behalf they invoke the decision in the case of Hart v. Railroad Co., 112 U. S. 331, 5 Sup. Ct. 151, wherein it was held, in substance, that an agreement between a shipper and carrier limiting the amount to be paid for the loss of goods intrusted to the carrier, even if they were lost or damaged by the negligence of the carrier, was lawful, and not contrary to public policy. We are asked to extend that doctrine to contracts for the carriage of passengers. We must decline to do so, or to express an opinion on that question, deeming it unnecessary to decide it on the present occasion. The contract involved in the case at bar, as we view it, was one in which the deceased placed a limit upon the amount of damage that would be claimed by himself in case he sustained an injury and sought to recover compensation. Even if it was competent for the deceased to have done so, the contract in question will not bear the construction that he attempted to place a limit upon the amount which might be recovered by his personal representative, suing for the sole benefit of his widow, children, or next of kin, in case he received a fatal injury for which his personal representative could alone sue. The right of action which was sued upon in this case was created by a statute of the state of Kansas (2 Gen. St. Kan. 1897, p. 213) which allows the plaintiffs' to recover, for the injuries complained of, any sum not exceeding $10,000. It is a right of action which did not exist at common law, and, without the clearest evidence of such a purpose, we will not presume that the deceased intended to make a contract that would alter the rights of his widow and children or next of kin, as defined by the statute. It is sufficient to say that the agreement upon which the defendant companies rely to limit the damages that may be recovered shows, as we think, that the deceased was contracting solely with reference to a liability of the carrier to himself,

and not with reference to the statutory liability of the carrier to others, in case of his death through the wrongful act, neglect, or default of the carrier.

The principal controversy in the case is between the two railroad companies, and it arises from the contention of the R. I. Company that the other company is alone liable for the death of the deceased. This claim is based on the ground that the agreement under which the trains of the R. I. Company were operated between Topeka and Kansas City (the material parts of which agreement are quoted below in a footnote)[1] placed train operatives of the latter

[1] "Article 1. The party of the first part [the U. P. Company] covenants, promises, and agrees to and with the party of the second part as follows: It hereby lets, leases, and demises to the party of the second part, for a term of nine hundred and ninety-nine (999) years, commencing on the first day of September, A. D. one thousand eight hundred and eighty-seven (1887), the right and privilege to connect the tracks of its railway with the tracks of the party of the first part at North Topeka and Kansas City and Armstrong, and to run, operate, and manage its engines, cars, freight, and passenger trains in both directions over the railway of the party of the first part between said point of connection at North Topeka and the western boundary of the town of Armstrong. * * * The engines, cars, and trains of the party of the second part, when on said leased and demised premises, shall have all the rights and privileges accorded by the party of the first part to its own engines, cars, and trains on that portion of its lines. The party of the second part shall have the right to use, in common with the party of the first part, in the operation of its engines, cars, and trains, all the said tracks, telegraph offices, and water stations of the party of the first part, between said points herein specified and demised.

"Art. 2. The party of the second part covenants * * * that it will pay to said party of the first part for the use of said railway and its appurtenances herein demised an annual rental as follows: (1) A sum equal to five per centum upon seven hundred and eighteen thousand and four and seventy-five hundredths dollars. (2) A sum equal to one-half of all taxes which shall be legally assessed and levied upon the property described as follows: * * * (3) A sum equal to a proportional share of expenses actually incurred in repairing, renewing, and maintaining the roadbed, tracks, and bridges, station buildings, water stations, and side tracks between North Topeka and Kansas City, which shall bear the same proportion to the whole amount expended for such purposes as the number of wheels run over said portion of said railway by the party of the second part shall bear to the whole number of wheels operated thereon. (4) A sum equal to a proportional share of the expenses actually incurred in paying reasonable salaries to switchmen, telegraph operators, train dispatchers, and such other employés as may be employed in the performance of the duties incident to the joint use and occupation of said railway, as well as a like share of expenses for water supply, the proportion of each share to be ascertained in the manner provided in the last paragraph. (5) If the party of the first part lets, leases, or demises to any other railway company any right or privilege to operate trains on or over the railway between North Topeka and Kansas City, one-half of all rentals reserved or received shall be applied by the party of the first part in payment of rentals which shall accrue to said party of the first part from the party of the second part under this lease. * * *

"Art. 3. (1) The party of the second part will do no business as a carrier of persons or property to or from points between North Topeka and Kansas City. * * * (2) Joint schedules for the movement of engines and trains shall, when necessary, be made by the joint action of the proper officers of both parties, to have application to such portion of the railway of the party of the first part as is embraced in this lease. Such schedules shall, as nearly as may be practicable, accord equality of right, privilege, and advantage to trains of the same class operated by both parties hereto; and to trains of a superior class operated by either party, a preference over trains of an inferior class operated by the

86 F.—29

company under the orders of the superintendent or train dispatcher of the U. P. Company, and that the U. P. Company, for that reason, became solely liable to its own passengers for injuries by them sustained between the two cities, in consequence of any negligent act on the part of employés of the R. I. Company. In other words, it is claimed, broadly, that, by virtue of the provisions of the agreement, the rule of respondeat superior is not applicable, as between the R. I. Company and its own employés while operating its trains between North Topeka and Kansas City, in so far as persons are concerned who happen to sustain injuries from the negligence of such employés, except persons who are passengers on trains of the R. I. Company. It is conceded that the rule of respondeat superior would apply in favor of passengers of the R. I. Company suing that company. It will be observed, from the nature of the agreement quoted below, that it contemplated a joint use and occupation of the track between Kansas City and North Topeka by the two companies; that equality of right as to the movement of trains on the joint track was accorded to each company; that, when necessary, schedules for the movement of trains were to be arranged by the joint action of both companies; that the trains of each company were to be handled by its own employés; and that, in so far as that result could be accomplished by contract, each company was to assume responsibility to the other and to third parties for injuries occasioned by the negligence or misconduct of its own employés. The evidence shows that, while acting under this contract, the trains of the R. I. Company, whether freight or passenger, when they entered upon the track of the U. P. Company, either at Topeka or Kansas City, remained, as before, in charge of its own operatives. It was not the practice of the R. I. Company to turn over its trains to the U. P. Company, to be hauled by engines of the latter company; neither was it the practice of the U. P. Company to place any of its own employés on such trains, either to operate them or to direct their operation. When a Rock Island train entered upon the joint track, the employés of the R. I. Company in charge of such train retained the same control as before over the actual manipulation of the train. The passengers and freight on board thereof remained in the custody of the R. I. Company, and the latter company received the compensation which was paid for their carriage. Rock Island trainmen, however, while upon said track, were required to conform to joint schedules which had been prepared for the movement of trains, and to obey the orders that might be given

other. (3) The party of the first part shall make rules and regulations for the operation of that portion of its railway to be used by the parties jointly, which shall have like application to all engines and trains which may be moved over said railway. All trains shall move under and in accordance with the orders of the superintendent or train dispatcher of the party of the first part, who shall, as nearly as may be practicable, secure equality of right and privilege to all trains of the same class. * * * (5) Each party shall be liable as well to the other as to all third persons for all injury and damage done by the running of its trains or by the misconduct, carelessness, or neglect of its own employés, and, in the case of collision between the trains of the two parties, the one in fault shall sustain and pay all damages, or, if neither is at fault, each shall bear its own loss and damage."

from time to time by the superintendent or train dispatcher of the U. P. Company. This latter provision furnishes the sole basis for the contention that the R. I. Company is not liable in the present suit, although it be true that the death of the deceased was occasioned or contributed to by the negligence of its own engineer.

It must be observed at the outset that no attempt is made in the present case to hold the R. I. Company responsible because an improper order was given to its engineer by the train dispatcher of the U. P. Company, or because there was a failure to give him necessary orders, or to make reasonable regulations for the movement of trains over the track which was used jointly. The charge is, as against the R. I. Company, and it must be presumed that the jury found the accusation to be true, that its engineer was negligent in not discovering the freight train on which the deceased was riding in time to stop his own train and prevent the collision, or that he was negligent in failing to make proper efforts to arrest the motion of his own train after he had discovered the presence of the other train.

Can it be said, then, that the R. I. Company can claim exemption from liability for negligent acts of such a character, which were in no way attributable to the conduct of the train dispatcher of the U. P. Company, subject to whose orders the R. I. Company had, for the time being, placed its engineer? We are constrained to hold that this question should be answered in the negative.

It may be conceded that a servant may at the same time be in the general employ of one master and in the special service of another, and that if, while in such special service and under the exclusive control of the special master and doing his work, he is guilty of a negligent act, the special master is alone responsible therefor. Cases which illustrate this doctrine are those where a master lends or hires his servant or his servants, together with his tools and appliances, to another, to do some work in which the latter is engaged. And in such cases the rule of liability last stated is not altered by the fact that the servant is paid by the general master, nor by the fact that the work in hand is being done at the instance of and for the ultimate benefit of the general master, provided the special master has full charge and control of the work and of the persons employed therein, being with respect thereto an independent contractor. Miller v. Railway Co., 76 Iowa, 655, 39 N. W. 188; Hitte v. Railroad Co., 19 Neb. 620, 28 N. W. 284; Nason's Adm'r v. Railroad Co., 22 U. S. App. 220, 9 C. C. A. 666, 61 Fed. 605; Donovan v. Laing, Wharton & Down Construction Syndicate [1893] 1 Q. B. 629; Railroad Co. v. Grant, 46 Ga. 417; Cunningham v. Railroad Co., 51 Tex. 503; Rourke v. Colliery Co., 2 C. P. Div. 205; Powell v. Construction Co., 88 Tenn. 692, 13 S. W. 691. In the case of Smith v. Railway Co., 85 Mo. 418, it appeared that the defendant company had a contract with another railroad company to haul its trains some 30 miles from the end of its own line into the city of St. Louis over the track of the other company. The company which engaged to do the hauling furnished the locomotive and crew thereof, and the train was run pursuant to its rules and regulations. It was

held that a passenger who boarded the train between the two points above named, and was injured because the train did not halt long enough at a station where the passenger wished to alight to enable him to get off in safety, could not hold the defendant company liable, but must look to the company which had engaged to haul the defendant's train and had full charge of its movement.

Most of the foregoing cases have been cited in support of the contention of the R. I. Company, but none of them, we think, can be regarded as decisive of the case at bar. In all of them where a master was held exempt from liability for the wrongful acts of a person who was in his general service, such person, at the time of the commission of the negligent act, was not only acting under the direction and control of some special master, but he was doing that master's work, or work which that master had undertaken to perform, as an independent contractor. In the case now in hand it appears that the persons who were in charge of the Rock Island train at the time of the collision were not engaged in the performance of any service for and in behalf of the U. P. Company, or in aiding that company in the performance of any service, but were doing the work of the Rock Island Company to the same extent as if the train in their charge had been at the time on the track of the latter company. We fail, therefore, to perceive any sufficient reason for exempting the Rock Island Company from liability for the negligent acts of its servants which are charged in the complaint, especially as the acts in question were not done by direction of the U. P. Company, or in consequence of the failure of its train dispatcher to give any information or orders which he ought to have given. A master ought not to be allowed to escape liability for damage occasioned by the negligent acts of his servants committed while in his immediate service and doing his work, merely because he has empowered a third party to give that servant directions relative to certain matters connected with the doing of such work. In the case of Railway Company v. Groves, 56 Kan. 601, 44 Pac. 628, which is a case in most respects similar to the one at bar, the injury complained of having been occasioned by a collision between trains of the U. P. Company and the R. I. Company on the track between Kansas City and Topeka, the supreme court of Kansas reached a conclusion which is substantially in accord with the foregoing views. See, also, Hurlbut v. Railroad Co. (Mo. Sup.) 31 S. W. 1051. As no other questions besides those already considered were discussed on the argument, the judgment of the lower court is hereby affirmed.