ROGANVILLE LUMBER COMPANY v. GULF, BEAUMONT & KANSAS
CITY RAILWAY COMPANY.

Decided October 13, 1904.

**Contract—Master and Servant—Negligence.**

A provision in a contract between a lumber company and a railway company that the lumber company was to have free trackage for its cars over switches constructed by it and connecting with the railway's line, provided the operatives should be selected by and under the control of the officers of the railway, did not constitute such operatives, while running a train on the main line without orders, servants of the railway, so as to render it liable for their negligence in causing a collision and the destruction of certain cars.

Appeal from the District Court of Jasper.    Tried below before Hon.
W. P. Nicks.

*H. C. Howell,* for appellant.[*]

*F. J.* and *R. C. Duff,* for appellee.

GILL, ASSOCIATE JUSTICE.—This suit was brought by the Roganville Lumber Company to recover of the defendant, the Gulf, Beaumont & Kansas City Railway Company, damages for five logging cars destroyed in a collision between one of defendant's work trains and plaintiff's logging train.    He sought to recover other items of damage also, but in view of the disposition of this appeal they need not be stated.

The defendant pleaded contributory negligence on the part of plaintiff in operating its log train without orders from defendant, and negligence on the part of the operatives of the train in failing to protect it by signals and otherwise.

A trial before the court without a jury resulted in a judgment acquitting defendant of liability, and the cause is here on the appeal of plaintiff.

On the trial it was made to appear without dispute that plaintiffs were the owners and operatives of a sawmill near the defendant's line of railroad, and that at the time of the collision complained of the plaintiffs were the owners by assignment and purchase of the contract set out below which was in force at the date of the accident.

"This agreement made and entered into by and between the Gulf, Beaumont & Kansas City Railway Company, incorporated, party of the first part, and Hooker Brothers & Co., a firm composed of W. T. Hooker, James Hooker, J. M. Hooker and A. C. Zeirath (a private partnership), of Jasper County, Texas, party of the second part, this the 5th day of April, A. D. 1900, witnesses:    That the party of the first part owning a standard gauge railway leading from Beaumont, Jefferson County, Texas, to Roganville, Jasper County, Texas, and the party of the second part proposing to erect a sawmill on said line of railway near the town of Roganville, for the manufacture

of lumber for shipment over said railway, and desiring to use a portion of the railway of party of the first part in supplying logs to said mill, the party of the first part agrees in consideration of the traffic resulting to its railway from the construction and operation of said mill by the party of the second part, its successors and assigns, hereby grants to said party of the second part free trackage for a period of three years from the 1st day of August, A. D. 1900, for a locomotive and as many logging cars as may be required in logging said mill from Roganville or said mill to a switch to be constructed by the party of the second part, leading out from the main line of said railway near mile post to the timber of party of the second part, subject however to the following conditions: The party of the second part shall bear, and agrees hereby so to do, all expenses of construction of any and all switches, turnouts, etc., necessary or incident to the operation of said proposed milling business, and shall immediately begin construction of said mill and have the same in operation by the 1st day of August, 1900. That said party of the second part shall provide capable men for the operation of its trains in said business, and who shall in all cases be under the direct orders of the trainmaster or general superintendent of party of the first part while operating said trains on said railway, and shall not engage or undertake to keep in its service any trainmen not considered capable by said trainmaster or general superintendent or other officer of party of the first part to safely handle trains on said railway.

"This contract is made in contemplation of remaining in full force and effect for a period of three years from August, A. D. 1900, but revocable, however, by either party upon giving to the other party six months' written notice of purpose so to do. That during the continuance of the same it shall be the purpose of each party to the same to mutually subserve each other's interests. That the part of the second part agrees to pay for all cattle killed by its trains on the line of party of the first part and for all damage of every kind and character, if any, sustained by the party of the first part by or through the operation of the trains of the party of the second part on the railway of the party of the first part by virtue hereof or otherwise.

"In testimony whereof we have hereunto subscribed our names at Beaumont, Texas, in duplicate originals, this the day and year first above written.

"Gulf, Beaumont & Kansas City Railway Company, by John H. Kirby, General Manager. Hooker Brothers & Company, by W. T. Hooker, Manager."

It was also shown that plaintiff was then the lessee of the logging cars for the loss of which it sues, and that prior to the institution of this suit it purchased from J. H. Kirby, their owner, his cause of action for their destruction. Its right to maintain the suit in these respects is not questioned.

The record in the light of the judgment of the trial court justifies

the following fact conclusions as to the circumstances preceding and attending the accident. The defendant is a railroad company operating freight and passenger trains over its line of road extending from Beaumont to Roganville. It entered into the contract above set out for the considerations therein stated and same was in force at the date of the accident. In pursuance of its terms plaintiffs employed to operate its log trains on defendant's road only such men as were acceptable to the officers of the defendant company, and to this end formal applications were signed by them addressed to the defendant company. The operatives of the logging train at the time of the accident had been so selected. The lumber company had at its own expense built certain switches and spurs connected with defendant's line of railway designed for use in hauling logs from the forests to its sawmill, and in connection with them a certain part of defendant's track could be used under the terms of the contract, but defendant's railway was to be used by the log trains subject to and according to the orders of defendant's train dispatcher. Prior to the accident the logging train operatives had usually received weekly orders, but on the occasion in question were without orders. Had called on the local agent and failed to get them, and had assumed to enter upon and use defendant's track under orders issued the week before and not then in force. They were at the time without orders to go upon defendant's track and defendant was operating its trains on the assumption that its track was clear of the logging trains. In addition to this it was a general requirement of the operatives of the logging trains that they, when on defendant's tracks, should protect themselves from defendant's extra trains by flags, and this they failed to do on the occasion in question. On the occasion of the accident the logging train was being propelled backwards on defendant's line when an extra work train of defendant running under orders from the train dispatcher collided with it and destroyed the cars as alleged. The operatives of the logging train were negligent in running their train on defendant's track in the absence of orders and were also negligent in failing to protect their train by flags.

These findings dispose of appellant's contentions respecting the facts. There remains, however, the question of the construction of the contract under which they used defendant's road, a point upon which plaintiff chiefly relies.

Plaintiff contends that because the contract provided that the operatives of the log train should be competent and satisfactory to defendant and should operate the train on defendant's road only subject to the latter's orders, the logging train operatives became the servants of defendant, for whose negligence plaintiff was in nowise responsible. We can not assent to the construction contended for.

The fact is undisputed that the contract contemplated that the logging train operatives were employed and paid by plaintiff and the latter was their master. The work done by them was primarily for the benefit of plaintiff, the railway company deriving from their services only

the incidental benefit of hauling as freight the product of the mill. Whether they operated the log train or not was a matter in which defendant had no concern, and its interest arose only when the log train invaded its track and continued only so long as it remained thereon. If plaintiff had at any time a supply of logs and wished to put the log train hands at other work, it is certainly true that defendant would have had no right to protest or to interpose its orders in opposition to those of plaintiff.

It seems to us the provision of the contract with reference to orders as to running the log train on defendant's track was manifestly designed to conserve the safety of defendant's trains, of plaintiff's trains, and above all the safety of the public. To have omitted the reservation of this right, thus jeopardizing the lives of its servants and passengers, would have been the gravest negligence on the part of defendant.

It is doubtless true that if the accident had occurred while the operatives of the logging train were observing and acting under the orders of the train dispatcher plaintiff's position would be sound in effect, for then defendant would not be heard to say that obedience to its orders was negligence. But in the case at bar they were acting on their own judgment, having received no orders from defendant and having failed to observe the required precaution to put out signals to protect them against extra trains.

We find no error in the judgment. It is therefore affirmed.

*Affirmed.*

### ADDITIONAL CONCLUSIONS OF FACT.

GILL, Associate Justice.—Appellant requests us to supplement our fact conclusions with the lease from Kirby. We shall not incumber our findings with the instrument mentioned. It appears in full in the record and its execution and the rights of appellant under it are in no way questioned.

The request for the substance of the testimony of six of the witnesses is also denied. The evidence presents the issue of negligence on the part of the operatives of appellee's work train with the knowledge or belief that appellant's log train was on the railway track at some point between Roganville and Zeirath, but it is undisputed that the log train was on the track without orders from appellee and that its operatives failed to observe the required precautions for its safety.

We find further, in response to appellant's request, that appellee had a rule to the effect that when an order had been given to one train to work between designated points no other extra shall be authorized to run over that part of the track without provision for passing the "work-extra," but we regard the rule as without importance in this case because the log train was on the track without orders.

Filed November 11, 1904.

Writ of error refused.