## HAMBLE v. ATCHISON, T. & S. F. RY. CO.

(Circuit Court of Appeals, Ninth Circuit. October 5, 1908.)

No. 1,543.

1. RAILROADS (§ 261*) — JOINT USE OF TRACKS — LIABILITY FOR INJURY FROM NEGLIGENT OPERATION OF TRAINS.

Where the trains of one railroad company in charge of its own employés run over the tracks of another company under a contract that they shall obey the orders of the train dispatcher of the latter company, such contract does not relieve the company so using the tracks from liability for injuries caused to third persons by the negligence of its employés operating its trains in no way attributable to any order of the train dispatcher.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 825, 826; Dec. Dig. § 261.*]

2. MASTER AND SERVANT (§ 193*)—FELLOW SERVANTS—SERVANTS OF SEPARATE MASTERS IN SAME WORK.

An employé of a railroad company does not by virtue of his contract of service assume the risk of injury from the negligence of the servants of another company jointly using the tracks of his employer, but has the same right of action against such company for an injury so occurring as any stranger.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 193.*]

In Error to the Circuit Court of the United States for the Southern Division of the Southern District of California.

The plaintiff in error brought an action in the court below to recover damages for personal injuries suffered by him as the result of a rear-end collision between two railway trains. The complaint alleged that the accident was occasioned by the negligence of the defendant in error in operating one of the trains. The answer denied negligence, and alleged contributory negligence on the part of the plaintiff in error, and for a further defense alleged in substance that the railway upon which the accident occurred belonged to the Southern Pacific Railroad Company, and that the defendant in error was using the same by virtue of a license from the Southern Pacific Company, authorizing it to run and operate its engines, cars, and trains thereon, and that the operation and movement of all engines, cars, and trains of the defendant in error thereon was to be subject to the immediate direction, government, and superintendence of said Southern Pacific Company, and that the train so alleged to have been negligently operated by the defendant in error was, at the time of the accident, under the sole direction, control, and government of the Southern Pacific Company and its agents. The evidence showed that the plaintiff in error was a conductor in the employment of the Southern Pacific Company, and had charge of its freight train No. 2,602, bound from Los Angeles to Bakersfield. The accident occurred at about 6:25 in the morning. The plaintiff in error had crossed the summit of the Tehachapi Mountains, and running in a westerly direction on a downhill grade, had passed through tunnel No. 5, and about 20 minutes before the accident had reached a point where the rear end of his train, including the caboose, stood in the westerly end of tunnel No. 4, where his train stood until the time of the accident, for the reason that the track ahead of him was obstructed by other trains so that he could not proceed. The distance between the two tunnels is about 2,750 feet. The track from No. 5 to No. 4 runs on a downgrade of about 120 feet to the mile, and the whole course of it is plainly visible from the westerly end of No. 5. The track was equipped with an efficient system of automatic block signals, which were in working order. The plaintiff in error and his train crew adopted the usual methods and devices required by the rules in such cases to prevent a rear-end collision. Immediately on coming to a

standstill, a brakeman went back up the road and strapped to the rails at different intervals between the tunnels four torpedoes, and ignited two fusees. which were stuck into the ties at points where they were most likely to be seen by an overtaking train, and one of the fusees was still burning after the accident. The overtaking train consisted of two heavy engines and a caboose belonging to the defendant in error and one light engine at the front end of the train belonging to the Southern Pacific Company. It was in charge of a conductor of the defendant in error, but the engineer of the Southern Pacific engine was in the employment of the Southern Pacific Company. The plaintiff in error knew that this train was following him. His orders required him to look out for a train ahead and a train behind. He received these orders at Summit Station, from the Southern Pacific train dispatcher. There is no evidence that either train disregarded in any way the instructions of the train dispatcher. The evidence shows that the overtaking train passed the danger signal showing red at the easterly limit of the block on which the plaintiff in error's train was standing. This signal was a mile up the grade and above the easterly end of tunnel No. 6. After passing this signal, the defendant in error's train came out of the west end of tunnel No. 5 at a speed of from 25 to 30 miles an hour, came down the grade at that speed, exploding the four torpedoes, passing over the burning fusees, passing the signaling brakeman Smith, and the yellow caution light near the easterly mouth of tunnel No. 4, thence into collision with the rear end of the plaintiff in error's train. At the close of the evidence for the plaintiff in error, the defendant in error moved for a nonsuit, which was granted on the ground that the overtaking train, from the time it left Summit Station, was under the control and direction of the Southern Pacific Company, and not of the defendant in error. That ruling is assigned as error.

Harris & Harris and F. W. Thompson (Newman Jones, of counsel), for plaintiff in error.

E. W. Camp, A. H. Van Cott, and U. T. Clotfelter, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The record shows that the defendant in error was in the joint use with the Southern Pacific Railroad Company of a portion of the latter's track under a license, and that its trains were under the control and direction of the Southern Pacific Company. The trains that came into collision had started from Summit Station under the direction of the Southern Pacific Company's train dispatcher at Bakersfield. It is to be admitted that a railroad company operating its trains over the road of another under a license to use the same, and subject to the direction of the latter and the rules and regulations of its road, is not answerable for injury occurring to third persons through the negligent acts of the train dispatcher or other officers in whose charge is the management and the control of the movement of trains. But when the injury occurs to a third person through the negligent act of the employés of the licensed company, not resulting from any negligent order as to the movement of trains, but wholly through the negligence of the conductor in charge of a train of the licensed company, is that company liable therefor? That is the question which this case presents.

The decisions involving the proposition are not numerous, and they are contradictory. The court below followed the rule laid down in Atwood v. Chicago, R. I. & P. Ry. Co. (C. C.) 72 Fed. 447. In that case both the railroad companies were made parties defendant, and the negligence alleged by the plaintiff was that the receivers of the

Union Pacific Company negligently and carelessly permitted a Rock Island train to leave Lawrence within five minutes after the departure of a train of the Union Pacific. The evidence, however, tended to show that, after the Rock Island train left Lawrence, the employés in charge of it, knowing that the Union Pacific train was in front, could, by the exercise of due care, have avoided the accident. The court ruled that the plaintiff could recover only by proof of the negligence alleged in the complaint, and that as there was nothing to justify a finding that the Union Pacific Company started the trains from Lawrence too close together, or that such act, if proved, was the proximate cause of the injury, there was no ground for holding that company liable for the injury, and as to the Rock Island Company, the court held that as the contract provided that the Union Pacific Company should have the exclusive right to make rules for the operation of that part of the road used by the parties jointly, and that all trains should move in accordance with the order of its superintendent, and since the Rock Island Company had no right or power to direct movements of its trains while on the track, it could not be held responsible to third parties, on the doctrine of respondeat superior, for any negligence of the men in charge of the train while running over such track, though they were in its employment and paid by it. This ruling was based upon the ground that the master was at the time without the power to control the act of the imputed servant; that power being taken from the Rock Island Company and conferred upon the Union Pacific Company by the contract under which trains were operated, "the rules and regulations of which," said the court, "placed the management of the trains, the whole manner of their operation, the speed at which they shall run, under the management of the Union Pacific Railroad Company. They prescribe how they shall approach other trains, the distance to be observed between trains while occupying the same track going in the same direction, and the safeguards that each must throw out and the circumspection and vigilance each shall exercise. And," continued the court, "the party who failed to observe these rules and regulations was violating the rules and regulations of the Union Pacific Railway Company, and the defendant, the Rock Island Company, was without the power or authority under its contract to give a single direction."

On the other hand, in Clark v. Geer, 86 Fed. 447, 32 C. C. A. 295, the Circuit Court of Appeals for the Eighth Circuit, by Thayer, Circuit Judge, held that where the trains of one company, in charge of its own employés, run over the track of another company, under a contract that they shall obey the orders of the train dispatcher of the latter company, such contract does not release the company so using the track from liability for injuries caused by the negligence of its employés, and that a master cannot claim exemption from liability for damages occasioned by the negligent act of his servant, committed while in his immediate service and doing his work, merely because he has empowered a third party to give that servant directions relative to certain matters connected with the doing of the work. In that case the action was brought against the Rock Island Company and the receivers of the Union Pacific Company. The injury occurred to a

passenger on a freight train of the Union Pacific Company, which was run into at the rear end by a freight train of the Rock Island Company. The complaint alleged that the injury was occasioned by the negligence of both railway companies, and by the negligence of the Rock Island Company in particular, in the failure of its engineer in charge of its freight train to keep a proper lookout ahead, and the failure on his part to discover at an earlier moment, as he ought to have done, the red lights on the rear end of the Union Pacific train. There was a verdict and judgment against both companies in the court below. The appellate court, after referring to the fact that no attempt was made to hold the Rock Island Company responsible, because an improper order had been given to its engineer by the train dispatcher of the Union Pacific Company, or that the latter had failed to make reasonable regulations for the movement of trains over the track which was used jointly, and to the presumption that the jury found that the engineer of the Rock Island Company was negligent as charged in the complaint, observed:

"Can it be said, then, that the Rock Island Company can claim exemption from liability for negligent acts of such a character which were in no way attributable to the conduct of the train dispatcher of the Union Pacific Company, subject to whose orders the Rock Island Company had for the time being placed its engineers? We are constrained to hold that this question should be answered in the negative. It may be conceded that a servant may at the same time be in the general employ of one master and in the special service of another, and that if, while in such special service and under the exclusive control of the special master and doing his work, he is guilty of a negligent act, the special master is alone responsible therefor. * * * In the case now in hand, it appears that the persons who were in charge of the Rock Island train at the time of the collision were not engaged in the performance of any service for and in behalf of the Union Pacific Company, or in aiding that company in the performance of any service, but were doing the work of the Rock Island Company to the same extent as if the train in their charge had been at the time on the track of the latter company. We fail, therefore, to perceive any sufficient reason for exempting the Rock Island Company from liability for the negligent acts of its servants which are charged in the complaint, especially as the acts in question were not done by the direction of the Union Pacific Company, or in consequence of the failure of its train dispatcher to give any information or orders which he ought to have given."

The doctrine so announced in Clark v. Geer seems to us sound in principle and just. On what principle should the Southern Pacific Company be held liable for the negligence of the servants of another company in doing acts over which it had no control in fact? It cannot be said, with any due regard for the meaning of words, that the servants of the defendant in error were the servants of the Southern Pacific Company. Notwithstanding that they were on the road of the latter, they were at all times about their own master's business. They were not working for the Southern Pacific Company, or rendering that company any service. The most that can be said is that for the time being, while serving their own master, they were under the direction of the Southern Pacific Company as to certain prescribed regulations concerning the time of starting and stopping their trains and the rules of the road, regulations essentially necessary for the safety of the trains of both companies. In all other respects they remained the servants of the company in whose service they were, by

which they were hired and discharged, and from which they received their compensation.

In Philadelphia & Reading R. R. Co. v. Derby, 14 How. 468–486, 14 L. Ed. 502, it was said:

"The rule of respondeat superior, or that the master shall be civilly liable for the tortious acts of his servant, is of universal application, whether the act be one of omission or commission, whether negligent, fraudulent, or deceitful. If it be done in the course of his employment, the master is liable, and it makes no difference that the master did not authorize or even know of the servant's act or neglect, or even if he disapproved or forbade it. He is equally liable if the act be done in the course of his servant's employment."

The test of the master's liability, therefore, is whether the act done by the servant was, at the time and place, done in the course of the servant's employment and while the servant was under the master's control, and he is under the master's control at all times while the master has the right to control him, whether he exercise control or not. The servants of the Santa Fé Company, in operating their trains, were in the general employment of that company, and subject to its control. They were not subject to the control of the Southern Pacific Company, except as to certain specified acts. In all other respects they were answerable to their master. The Southern Pacific Company had no power to hire or discharge them, or to compel them to exercise care in operating their master's trains. No diligence on the part of that company, as far as the record before us shows, could have averted the accident. To avoid liability the original master must resign full control of the servant for the time being. It is not sufficient that the servant is partially under the control of another. Garven v. C., R. I. & P. Ry. Co., 100 Mo. App. 617, 75 S. W. 193; Chicago, R. I. & P. Co. v. Groves, 56 Kan. 601, 44 Pac. 628; Chicago, R. I. & P. Co. v. Martin, 59 Kan. 437, 53 Pac. 461; Sullivan v. Tioga R. R. Co., 112 N. Y. 643, 20 N. E. 569, 8 Am. St. Rep. 793; Roganville Lumber Co. v. Gulf, B. & K. G. Ry. Co., 36 Tex. Civ. App. 563, 82 S. W. 816; Chicago, R. I. & P. Ry. Co. v. Posten, 59 Kan. 449, 53 Pac. 465. In the case last cited the court said:

"For keeping the tracks and other Union Pacific property in repair, the Union Pacific Company is primarily responsible; but for the conduct, skill, and diligence of the trainmen in the operation of trains of the Rock Island Company it clearly is answerable both to its own passengers and to all others affected thereby. The negligence for which the Rock Island was held liable was the negligence of the engineer and other trainmen employed by it and in charge of its train. We are not called on to consider any question concerning its liability for the negligence or mismanagement of train dispatchers, telegraph operators, switchmen, or other persons employed by the Union Pacific, but whose duties relate to the trains of both companies. It is clear that the Rock Island is responsible for the conduct of its employés in the operation of its trains over the Union Pacific tracks, and that the management of Rock Island trains by employés of the Union Pacific Company is confined to orders and regulations in reference to their movements."

In Sullivan v. Tioga R. R. Co., 112 N. Y. 643, 20 N. E. 569, 8 Am. St. Rep. 793, the plaintiff, who was in the employment of one railroad company, was injured through the negligence of the employés of another company jointly using the same track. Of such negligence the court said:

"Their negligence was not one of the risks which, by virtue of his contract of service, he had taken upon himself. He was at no time under the authority of the defendant, nor in any respect its servant. He neither owed service to it, nor did he render it. * * * The intestate was, in respect to his employment, a stranger to the defendant. He was merely at work in a yard to which, by permission of his employer, the defendants by its servants had access. He was removing ashes from the pit; they, running an engine over a part of it to reach the turntable; and the duties of each were so limited, neither was responsible to the master of the other for the manner of the performance. There was no common master, and although, having regard to the place of service, they were neighbors, they were not co-servants. Each, therefore, is entitled to protection against the negligence of the other."

The liability of the defendant in error is not affected by the fact that one of the engines attached to its train belonged to the Southern Pacific Company and was operated by an engineer of that company. The evidence shows that, to avoid loss of time between signal blocks, the train dispatcher had directed the conductor of the train to attach the Southern Pacific engine and bring it to Kern Junction. Notwithstanding the presence of this engine, the train remained in the control of the conductor. He was responsible for the speed at which it was run. He admitted that he ran the train carelessly, and that while running at the rate of 30 miles an hour he saw a danger signal, and that he was negligent in permitting the engineer to run at the speed at which the train was going.

The judgment is reversed, and the cause is remanded for a new trial.