The Chicago, Rock Island and Pacific Railway Company, and S. H. H. Clark *et al.*, *Receivers of the Union Pacific Railway Company*, v. Lissa Martin, *Administratrix.*

### No. 10381.

1. Error Cured—*in admission of incompetent evidence, where findings of jury discredit it.* A judgment will not be reversed on account of the admission of incompetent evidence where the findings of the jury show that they have discredited such evidence and that the fact is contrary thereto.

2. Removal of Cause—Liability of Railroad Company Jointly Using Track—(a) *joint action for wrongfully causing death not removable by one defendant;* (b) *companies jointly using track, jointly liable where negligence of employees of each contributed in causing death;* (c) *what care to prevent collision required of companies jointly using track;* (d) *negligence of one company's employees established, its liability for negligence of employees of other company jointly sued, not considered.* In an action against the Chicago, Rock Island & Pacific Railway Company, and the receivers of the Union Pacific Railway Company, to recover damages for wrongfully causing the death of the plaintiff's intestate while a passenger on the train of the latter company, with which a train of the former collided, where the employees in charge of each train were charged with negligence, and through such negligence jointly causing the death: *Held, first*, that after answer by the railway company, the receivers are not entitled to remove the cause into the Circuit Court of the United States, either on the ground of diverse citizenship or that the case is one arising under the laws of the United States, without joinder by their codefendant in the petition for removal. *Held, second*, that where the negligence of the servants of each defendant directly contributed to the death of plaintiff's intestate, both are liable. *Held, third*, that where both trains were being operated on the roadway of the Union Pacific Company, under an arrangement for the joint use of the track by both companies, an instruction that it was the duty of the Chicago, Rock Island & Pacific Company, in the operation of its trains " to use all reasonably practicable care and caution, as far as human foresight could go under the circumstances, to prevent its trains from running into the trains of the Receivers of the Union Pacific Company, which were being operated at the same time over the same track," does not impose too high a duty of care and diligence on the former Company. *Held, fourth*, where the culpable negligence of the employees of the Receivers in charge of their train is

clearly established by the special findings of the jury, this court will not consider the question whether they are also chargeable with the negligence of the servants of the Chicago, Rock Island & Pacific Company.

3. COMPANY JOINTLY USING ANOTHER TRACK — *liable for culpable negligence of employees, though operating train under orders of other company.* The case of the Chicago, Rock Island & Pacific Railway Company *v.* Groves, approved and followed.

4. STOCK-PASS — *clause in, limiting liability to holder, not binding on widow and children suing under* § *418, Gen. Stat. 1897.* A stipulation in a stock-pass, on which the deceased was riding, in terms limiting the liability of the receivers of the railway company for injuries to him resulting from the negligence of their servants, does not limit the recovery of his administratrix for damages sustained by the widow and children through his death, for which a right of recovery is given to her by section 418, chapter 95, of the General Statutes of 1897.

Error from Clay District Court. R. B. Spilman, Judge. Opinion filed June 11, 1898. *Affirmed.*

*M. A. Low* and *W. F. Evans,* for C. R. I. & P. Rly. Co.

*A. L. Williams, N. H. Loomis* and *R. W. Blair,* for S. H. H. Clark *et al.*

*F. B. Dawes,* for defendant in error.

ALLEN, J. This action grows out of a collision of a freight train of the Chicago, Rock Island & Pacific Railway Company with one of the Union Pacific Railway Company, near Linwood in Leavenworth County, on the second of January, 1894, by which William Martin, the plaintiff's intestate, was killed.

At the time of the collision, six trains were moving eastward over the Union Pacific Railway, in close proximity to each other. They were designated as Union Pacific number 14, Rock Island first 30, Union Pacific first 12, Rock Island second 30, Union Pacific second 12, and Rock Island number 32. Union Pacific number 14 was in the lead, and the others followed in order as above stated. Martin was a passenger in

charge of a car load of stock on Union Pacific first 12. All these trains were running an hour or more behind their schedule time. The collision occurred at about 5 : 30 in the morning, at a point about three-quarters of a mile west of Linwood station. Rock Island train second 30 ran into the rear end of Union Pacific first 12. Westward from the point of collision, the track is straight for a distance of 960 feet; thence there is a slight curve to the right for about 306 feet. From the end of this curve it is a tangent for about 6500 feet. The collision occurred before daylight on a clear starlight night.

It appears that the trains of the Rock Island Company were operated over the line of the Union Pacific Company, between Topeka and Kansas City, under some kind of a lease, which was not introduced in evidence. Rules governing the movement of trains were promulgated by the Union Pacific Company, and the telegraph operators and train dispatchers were employed by that company; but the trainmen on the Rock Island trains were employed by the Rock Island Company. The plaintiff charged negligence in the management of both the colliding trains. The fact that the plaintiff's intestate was killed in the collision was conceded, and there was no serious dispute over the proposition that it resulted from the negligence of the employees in charge of one or the other or both of the trains. Each defendant, however, denied its own liability, and sought to cast the responsibility on the other. The jury rendered a verdict against both for $10,000, on which judgment was entered. They also returned answers to special questions submitted on behalf of each company.

In answer to questions submitted on behalf of the Rock Island Company, the jury found most of the facts as above stated, and also that as Union Pacific

train number 14 passed, it left a burning fusee at or near the west end of the curve above mentioned as a signal to the following train to stop; that Rock Island train number first 30 answered the signal, and in turn also placed a burning fusee at or near the same point, as a signal to Union Pacific train number first 12 to stop; that Quick, the engineer of the last mentioned train, saw the fusee at a distance of a mile and a half away; that it was his duty to answer the signal by two short blasts of the whistle; that he did not answer it in any manner; that if it had been answered, it would then have been the duty of the conductor and rear brakeman to at once ascertain what signal he was answering; that they could have ascertained what it was in time to protect the rear end of their train by proper signals; that the rules of the Company required an engineer seeing a burning fusee on the track to bring his train to a full stop before reaching the fusee, and not proceed until it should be burned out; that Quick did not stop his train, but ran on over the fusee in violation of the rules; that if Quick had performed his duty by stopping and giving the signals, and if the conductor and rear brakeman had given proper signals to protect the rear of the train the persons operating the second section of Rock Island No. 30 could have seen these signals in time to have avoided the collision; that Union Pacific first 12 also ran over and exploded two torpedoes which had been placed on the track as additional warning; that on approaching the burning fusee, and before passing over the same, the trainmen on the Union Pacific first 12 did not send out a flagman nor give any signal to protect the rear of the train from a collision with the following train; that the rules of the Union Pacific Railway Company prescribe the manner in which signals should be used

and obeyed by all trains on its road between Kansas City and Topeka, and that, while on the Union Pacific track, the persons employed on the trains of the Rock Island Company received all orders for the government and operation of the trains from the receivers of the Union Pacific Company.

In answer to special questions submitted by the receivers, the jury found that the collision occurred about 1266 feet east of the west point of the curve before mentioned; that the track was straight from the west point of the curve for a distance of about a mile and a quarter; that an engineer on a locomotive situated at the west end of this straight piece of track could have had an unobstructed view of the tail lights on a train located at any point east of him on the straight piece of track; and that the employees of the Rock Island company on train second 30 could have had an unobstructed and continuous view of the tail lights of Union Pacific train number first 12 for the distance of about a mile and a half west of the point of collision; that the Rock Island train could have been stopped within from 900 to 1100 feet from the place where the engineer first saw the tail lights of the Union Pacific train; that he saw the tail lights when within about 1400 feet of the train; that both the front and rear brakemen of the Rock Island train saw the tail lights when the trains were still further apart, and that the train ran twice its length after the rear brakeman saw the tail lights before he called the attention of any one to the train ahead; that the Union Pacific train was running at the rate of about ten miles an hour, and the Rock Island train about eighteen miles an hour at the time of collision; that within a couple of seconds after the engineer of the Rock Island train saw the tail lights ahead of him he saw a lantern swung across the track from the rear of the Union Pacific caboose,

which was a signal to him to stop; that he did not answer this signal; that Duplessis, the Rock Island engineer, knew that Linwood was a station where trains were in the habit of taking water, and where telegraphic orders for the movement of trains were given; that he knew three trains were just preceding him, one or all of which were liable to stop at Linwood; that it was the duty of the train men in charge of the Rock Island train to approach Linwood station carefully, and with their train under control; that they were chargeable with negligence, in the operation of the train, which contributed directly to the collision and the death of the plaintiff; that the train was in charge of Rock Island employees, pulled by a Rock Island locomotive, and that the officials of the Union Pacific did not have anything to do with the movement of the train, other than giving orders directing when the train should leave stations; that the Rock Island Company had, and the Receivers had not power to employ and discharge the trainmen operating Rock Island trains over that track.

Separate petitions in error, charging numerous errors, are filed in this court by the Rock Island Company and the Receivers of the Union Pacific Company, and elaborate briefs are presented on behalf of each discussing at length the errors alleged. The points appearing worthy of mention in the opinion will be discussed in the order of their statement in the briefs, beginning with those urged by counsel for the Rock Island.

The first complaint is of the admission, as a deposition of the absent witness, A. T. Palmer, of the affidavit for a continuance, made by R. W. Blair. The statements in the affidavit tended to exculpate the employees in charge of the Union Pacific train from the charge of negligence, and to prove that the engineer in charge

1. Error in admission of incompetent evidence cured, when.

of the Rock Island train could have seen the tail lights of the Union Pacific train in time to have prevented the collision. Some of the statements are in the form of conclusions, and it is urged that they were objectionable both in form and substance. The answers returned by the jury to the special questions, however, show that the jury gave no credence to this testimony so far as it tended to exculpate the Union Pacific employees, for they found the facts to be contrary to the statements in the affidavit. The statement as to the distance at which tail lights could be seen was not necessarily an opinion. By observation the witness might have been, and probably was, able to testify from his own knowledge.

The testimony of D. C. Bevard and W. E. Donnelly set out in the brief appears to be objectionable in form, but the jury in their special findings show that they did not accept it as true; for they found against the statements made by these witnesses. The testimony of Whittaker, of which complaint is made, is quite unimportant. There was no error in the admission of the American Mortality Tables. They were shown to be in use, and they are recognized as competent evidence to prove the expectancy of human life.

Complaint is made of the following instruction :

"10. It was the duty of the Chicago, Rock Island & Pacific Railway Company in the operation of its trains over the track of the Union Pacific Railway Company between Topeka and Kansas City, with the permission of or under some arrangement with the Receivers of the said Union Pacific Company, to see that they were managed and run with reference to all known, or reasonably to be anticipated surroundings, and to use all reasonably practicable care and caution as far as human foresight could go under the circumstances, to prevent its trains from running into the trains of the Receivers of the Union Pacific Railway Company, which were being operated at the same

time over the same track. The want of such care and caution on the part of the servants and employees of the Chicago, Rock Island & Pacific Railway Company whom it had placed in charge and control of any of its said trains would be negligence on the part of said company.''

In criticism of this instruction, it is urged that the deceased was not a passenger of the Rock Island Company, and that it owed toward him no greater duty than that of ordinary care ; that this instruction imposed on it a much higher degree of diligence, and made it bound to use ''all reasonably practicable care and caution as far as human foresight could go under the circumstances.'' It is contended also, that this instruction imposed liability on the Rock Island Company for the negligence or mismanagement of the employees of the Union Pacific Company, who directed the operation of the train. Where two railroad companies operate their trains over the same track, and in the manner shown in this case, the measure of care to be exercised by the employees of one company to prevent injuries to passengers on the trains of the other, stated in this instruction, is not too great. It is not greater than a person of ordinary prudence would exercise under the circumstances. The consequences necessarily resulting from collisions of railroad trains are of such moment that trainmen knowing their proximity are bound to be constantly on the alert, and to exercise the utmost vigilance and promptness in avoiding and preventing such collisions. Common prudence requires this. This instruction does not impose an exceptional or extraordinary vigilance on this particular occasion, but simply requires the exercise of such vigilance as should be exacted of all employees on all trains under like circumstances.

*2 (c). What care to prevent collisions required.*

In the first paragraph of the instructions the court informed the jury : " The occasion and cause of the death of said William Martin, as claimed by plaintiff, are stated in detail in the petition filed by her, which had been read in your hearing, and which you may take with you when you go to your jury room." It is said that it is the duty of the court to construe the pleadings, and to state to the jury the issues of fact to be tried by them, and that it is error to send the pleadings into the jury room for the jury to read. This contention is sound, but it does not avail the plaintiff in error ; for the court instructed the jury fully and clearly as to the issues to be tried, and the record does not show that the pleadings were, in fact, taken by the jury to their room. A similar criticism is made of the instructions with reference to the rules, though nothing was said about their being sent out with the jury. The claim is, however, that the jury were left to construe them, as well as to determine their applicability to the facts of the case. The rules were promulgated by the Union Pacific Railway Company for the guidance of their trainmen. Those read in evidence were very clear and explicit. It is not apparent that by construction the court could have afforded the jury any additional light on their meaning. Our attention is not called to any point requiring construction by the court. The jury were rightly told that it was for them to determine the applicability of the rules to the circumstances shown to exist by the evidence.

There is no merit in the criticism of the thirteenth instruction.

Much stress is laid on the refusal of the court to give the second instruction asked by the Rock Island Company, which was to the effect that, if the jury

found from the evidence that the train second 30 was exclusively controlled and operated under the orders of the Receivers, the Receivers would alone be responsible for their conduct, even though they believed that the trainmen were employed and paid by the Rock Island Company. This contention has been decided adversely to the plaintiff in error in the case of the *C. R. I. & P. Rly. Co. v. Groves* ( 56 Kan. 601, 44 Pac. 628 ), with which we are entirely satisfied.

*2 (b). Companies jointly using track jointly liable, when.*

On behalf of the Receivers, the first contention is that a petition for the removal of the cause to the Circuit Court of the United States for the District of Kansas, was duly filed and the bond approved, but the court refused to order the removal ; and that the court thereby lost jurisdiction, and thereafter had no power to proceed. The answer of the Rock Island Company was filed on the fourteenth of February. The petition and bond of the Receivers for removal were filed on the twentieth of the same month. The Rock Island Company did not join in the application for removal, but it is now insisted by this Company, as well as by the Receivers, that the District Court lost jurisdiction by the filing of the petition and bond. It is said that the Union Pacific Railway Company has a right to remove causes from the State to the Federal courts by reason of a federal question being involved ; that its Receivers have a right to remove because of their appointment by the Federal court. It is contended that, conceding the right of the plaintiff to sue both defendants jointly, the Receivers have a right to remove, without being joined in the petition by the Rock Island Company, because the removal is based on the ground that a federal question is involved. It is conceded that if a right of removal

*2 (a). Joint action not removable by one defendant.*

had been claimed solely on the ground of citizenship it would have been necessary for all the defendants to join ; but, being based on the proposition that a federal question was involved, it is claimed that such joinder was unnecessary. In support of this claim the following cases are cited : *Ames v. Kansas Pacific,* 111 U. S. 449 ; *Pacific Removal Cases,* 115 id. 1 ; *Mitchell v. Smale,* 140 id. 406 ; *Texas & Pacific Ry. Co. v. Cox,* 145 id. 593 ; *Texas & Pacific Ry. Co. v. Cody,* 116 id. 606, and 17 Sup. Ct. Rep. 703 ; *Evans v. Dillingham,* 43 Fed. 177 ; *Seattle &c. Ry. Co. v. State,* 52 id. 596 ; *Central Trust Company v. Eastern Tenn. V. & G. Ry. Co.,* 59 id. 523 ; *Southern Pac. R. Co. v. Townsend,* 62 id. 161 ; *Landers v. Felton,* 73 id. 311 ; *Lund v. C. R. I. & P. Ry. Co.,* 78 id. 385.

The only ones of the cases cited that seem to us to support this contention are those from the 52d and 78th Federal Reporter. Our own construction of the Federal statute on the subject (section 2, page 612, Supplement to the Revised Statutes of the United States), is that it was necessary for both defendants to join in the petition for a removal. They were charged with jointly causing the death of the plaintiff's intestate. The controversy was not separable, and the Receivers alone had no right to removal on the ground that a federal question was involved. No federal question was in fact presented by the pleadings nor litigated at the trial. It was the ordinary action under our statute for wrongfully causing the death of the plaintiff's intestate. In the view that both defendants must join in the petition for removal we are supported by able Federal judges in the cases of *Thompson v. C. St. P. & K. C. Rly. Co.,* 60 Fed. 773, and *Shearing v. Trumbull,* 75 id. 33 ; and by *Texas & Pac. Rly. Co. v. Young,* 27 S. W. 145 ; Black's Dillon on Removal of Causes, § 77.

The deceased was riding on what is denominated a stock-pass, which contained the following provision :

" This ticket is not issued to the holder hereof as a passenger, but is issued at his special instance and request in order to enable him to accompany a stock shipment on a freight or stock-train in order to care for the stock *en route*, and the holder hereof agrees that the company shall not be liable to him in any manner as a passenger, nor for any accident resulting to him from the operation of the train in which he rides, or from the manner of handling the same by the employees of the company, and he further agrees that the Company shall not be liable to him for injury to the person or property of the person using this ticket, unless the same is caused by the gross negligence of the Company, and he further agrees that in no case shall the liability of the Company exceed the sum of $1000."

The verdict was for $10,000. Both plaintiffs in error claimed the benefit of this limitation as to liability. This action is not prosecuted by Martin himself, nor by his administratrix for the benefit of his general estate. It is an action instituted by his widow as administratrix, under section 418, General Statutes of 1897, for the benefit of herself and the children of the deceased. It is to recover their damages resulting from the death of the husband and father. It is to recover for the injury to them rather than to the deceased. Against their rights the deceased had no authority to contract. The cause of action for which the plaintiff sues never accrued to him. It could only accrue as a result of his death. His stipulation, even if binding on himself, is no defense against the statutory right of the plaintiff.

There was abundant proof of negligence on the part of the employees of the Receivers in charge of the train

*4. Clause in stock-pass not binding, when.*

2 (d). Liability for
negligence of
other company's
employees not
considered, when.

on which the plaintiff was riding, and the findings of the jury sustain the judgment against them. The fact that the crew of the Rock Island train were also negligent has no tendency to exonerate the Receivers. The jury have pointed out specific acts of negligence of the engineer, conductor and brakeman, on the Union Pacific train, which directly contributed to the collision. This being so, the Receivers are liable wholly without reference to the question whether they are also responsible for the negligence of the crew on the Rock Island train.

The other questions do not appear to be of sufficient importance to require elaboration here. The liability of both companies was established at the trial. No error is disclosed which could have affected the verdict. That both train crews were careless and failed to take reasonable precautions in the management of their trains is clearly and abundantly shown.

The judgment is affirmed.